**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Civil No.    1:26-cv-2796 |
| v. | |
| STATE OF MARYLAND,<br>100 State Circle, Annapolis, MD 21401 | **COMPLAINT** |
| MARYLAND HIGHER EDUCATION<br>COMMISSION (MHEC),<br>217 E. Redwood Street, Suite 2100<br>Baltimore, MD 21202 | |
| UNIVERSITY SYSTEM OF<br>MARYLAND BOARD OF REGENTS,<br>3300 Metzerott Road, Adelphi, MD 20783 | |
| Defendants. | |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

**INTRODUCTION**

1. Federal law prohibits illegal aliens in our Nation from being eligible to receive post-secondary education benefits based on residence within a state if such benefits are denied to U.S. citizens residing in other states. *See* 8 U.S.C. § 1623(a). There are no exceptions. Yet repeatedly and consistently over the last fifteen years, Maryland has flouted 8 U.S.C. § 1623(a) through legislative, regulatory, and policy measures.

2. In 2011, Maryland passed the "Maryland DREAM Act," Senate Bill 167 (SB 167),[1] codified at Md. Code Ann., Educ. § 15-106.8. Section 15-106.8 extends eligibility for Maryland in-state tuition benefits to illegal aliens while requiring U.S. citizens from other states to pay higher

---

[1] *See* Md. S.B. 167, 2011 Gen. Assemb., Reg. Sess. (Md. 2011) (adding Md. Code Ann., Educ. § 15-106.8; enacted as 2011 Md. Laws ch. 191).

1

tuition rates.[2] Maryland twice amended Section 15-106.8, maintaining the disparity between illegal aliens residing in Maryland and U.S. citizens from other states. First, in 2019, Maryland passed the "2019 Tuition Exemptions Amendment," Senate Bill 537 (SB 537), expanding eligibility under Section 15-106.8 to make it easier for illegal aliens to qualify for in-state tuition and postsecondary education benefits in Maryland.[3] Then in 2024, Maryland passed the "In-State Tuition Modernization Act," House Bill 473 (HB 473), which further expanded eligibility for illegal aliens to receive in-state tuition by reducing the number of years a parent must file taxes in Maryland to receive residency status to only two years,[4] a change made permanent in 2026. *See* House Bill 1530 (HB 1530), codified at Chapter 799 (2026) of the Laws of Maryland,[5] (amending Section 15-106.8).

3.      The Board of Regents of the University of Maryland System implements tuition guidelines for all schools within the System and approves the schools' tuition plans. Consistent with Section 15-106.8, schools offer in-state and out of state tuition rates, and make illegal aliens in Maryland eligible for in-state tuition based on residency in Maryland. The Maryland Higher Education Commission similarly requires all Community Colleges to disregard immigration status when determining residence for in-state tuition. *See* Md. Code Regs. 13B.07.02.03.[6] That Regulation requires all Community Colleges to implement tuition policies that do not "preclude

---

[2] *See* Md. Code Ann., Educ. § 15-106.8 (West 2025).
[3] *See* S.B. 537, 2019 Gen. Assemb., Reg. Sess. (Md. 2019) (amending Md. Code Ann., Educ. § 15-106.8; enacted as 2020 Md. Laws ch. 1).
[4] *See* Md. H.B. 473, 2024 Gen. Assemb., Reg. Sess. (Md. 2024) (amending Md. Code Ann., Educ. § 15-106.8(b)(4)).
[5] *See* H.B. 1530, 2026 Gen. Assemb., Reg. Sess. (Md. 2026) (amending Md. Code Ann., Educ. § 15-106.8(b)(4); enacted as 2026 Md. Laws ch. 799).
[6] *See* Md. Code Regs. 13B.07.02.03 (Md. Higher Educ. Comm'n 2025).

award of Maryland residency" if "the individual has the legal capacity to establish domicile in Maryland." Md. Code Regs. 13B.07.02.03.

4.      Collectively, such blatant unequal treatment favoring illegal aliens in Maryland over U.S. citizens from other states is squarely prohibited and preempted by Congress. Specifically, federal law mandates that "an alien who is not lawfully present in the United States *shall not* be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added). Accordingly, under the Supremacy Clause of our Nation's Constitution, Section 15-106.8's and Md. Code Regs. 13B.07.02.03's extension of eligibility for postsecondary education benefits to illegal aliens is unconstitutional and must yield to federal law.

5.      Maryland's eligibility laws have resulted in tangible benefits to illegal aliens residing in Maryland, benefits denied to U.S. citizens from other states. Between Summer 2024 and Spring 2025, illegal aliens saved nearly $9 million dollars in tuition costs at Maryland community colleges and public four-year colleges and universities by receiving in-state tuition benefits implemented pursuant to Section 15-106.8.[7]

6.      Numerous courts have struck down similar in-state tuition laws as unconstitutional based on Section 1623's preemptive effect. *See, e.g., Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023) (holding that Section 1623 "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same. No matter what a state says, if a state did not make U.S. citizens eligible, illegal aliens cannot be eligible"); *Equal*

---

[7] *See Sec.* Sanjay Rai, *Exemptions from Nonresident Tuition for Qualified Children of Undocumented Immigrations*, MHEC (July 2025), https://perma.cc/5TFD-NAP9..

*Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating that under Section 1623(a) "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state U.S. citizens receive this benefit"); *Foss v. Ariz. Bd. of Regents*, No. 1 CA-CV 18-0781, 2019 WL 5801690, at *3 (Ariz. Ct. App. Nov. 7, 2019) ("Section 1623 is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens. . . ."); *United States v. Texas*, 350 F.R.D. 74, 79–81 (N.D. Tex. 2025); *see also United States v. Texas*, No. 7:25-CV-00055, 2025 WL 1583869, at *1 (N.D. Tex. June 4, 2025) (permanently enjoining Texas defendants from enforcing Texas Education Code §§ 54.051(m) and 54.052(a) because the challenged provisions violated the Supremacy Clause), *aff'd United States v. Texas et al.*, --- F.4th ---, No. 25-10898, 2026 WL 1983151 (5th Cir. 2026); *United States v. Oklahoma*, No. 6:25-cv-00265, ECF 23 at 1 (E.D. Okla. Aug. 29, 2025) (Order and Final Consent Judgment); *see also United States v. Oklahoma*, No. 6:25-cv-00265, ECF 11 at 1 (E.D. Okla. Aug. 7, 2025) (Report and Recommendation) (holding that Section 1623(a) expressly preempts Oklahoma laws providing that individuals "who are not lawfully present in the United States may qualify for in-state tuition or nonresident tuition waivers if they meet certain residency and high school graduation criteria"); *United States v. Nebraska*, ---F.Supp.3d--- 2026 WL 1584862 *27 (D. Neb. June 3, 2026) (holding Nebraska laws were preempted by Section 1623(a) because "they allow aliens unlawfully present in the United States to qualify as 'residents' of Nebraska for the purpose of post-secondary education benefits but deny such benefits to United States citizens of other states"); *United States v. Kentucky Council on Postsecondary Educ., et al.*, No. 3:25-cv-00028, 2026 WL 880597 (E.D. Ky. Mar. 31, 2026) (holding Kentucky regulation violated Federal law, 8

4

U.S.C. § 1621(d), because it was a regulation, not an enacted State law as required by Section 1621(d)). This Court should do the same.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

8.      Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because all Defendants reside in this judicial district, and a substantial portion of the events giving rise to this Complaint arose from events occurring within this judicial district.

9.      The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2; 28 U.S.C. §§ 1651, 2201, and 2202; and the Court's inherent equitable powers.

## PARTIES

10.     Plaintiff, the United States of America, regulates immigration under its inherent, constitutional, and statutory authorities. The United States enforces Federal immigration laws through its Executive agencies, including the Department of Justice, Department of Homeland Security ("DHS"), and DHS component agencies, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and U.S. Customs and Border Protection.

11.     Defendant State of Maryland is a state of the United States.

12.     Defendant Maryland Higher Education Commission (MHEC or Commission) is an independent state agency created in 1988 with responsibility for the planning, supervision and coordination of Maryland's postsecondary education system. *See* Md. Code Ann., Educ. §§10-207, 11-105 (West 2025). In keeping with the goals outlined in the State Plan for Higher Education, Md. Code Ann., Educ. § 11-105(b)(1)-(3), the Commission establishes statewide policies for

public and private colleges and universities, and for private career schools.[8] The Commission "administer[s] the various scholarship, grant–in–aid, and tuition assistance programs established by law." *Id.* at §11-105(l).

13. Defendant University System of Maryland Board of Regents (the Board) is the governing body for the University System of Maryland.[9] The Board is charged with performing and carrying out the mandates and provisions of the "Education Article, Maryland Annotated Code," *see* University System of Maryland,[10] which includes Section 15-106.8,[11] and thus determines guidelines for tuition and fees across all institutions within the System.[12]

**FEDERAL LAW**

14. The Constitution empowers Congress to "establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3.

15. The Constitution also vests the President of the United States with "[t]he executive Power," U.S. Const. art. II, § 1, and authorizes the President to "take Care that the Laws be

---

[8] *See* Md. Manual Online, *Maryland Higher Education Commission – Origin and Functions*, MARYLAND STATE ARCHIVES (last visited June 30, 2026), https://perma.cc/W975-TPAN.
[9] *Id.* at 1.
[10] *See* University System of Maryland, *Bylaws of The Board of Regents of the University System of Maryland,* USMD (Dec. 15, 2023), https://perma.cc/JN9R-XNVW, at 7.
[11] *See also* Md. Manual Online, *University System of Maryland – Origin and Functions*, MARYLAND STATE ARCHIVES (last visited June 30, 2026), https://perma.cc/45WX-DMG7.
[12] University System of Maryland Fiscal 2026 Budget Overview at 6, https://mgaleg.maryland.gov/pubs/budgetfiscal/2026fy-budget-docs-operating-R30B00-University-System-of-Maryland-Overview.pdf.

faithfully executed," U.S. Const. art. II, § 3, which necessarily includes his duty to take care over immigration matters.

16.     The United States has inherent, well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from its inherent obligations as a sovereign, the Constitution, and numerous acts of Congress. *See, e.g.*, *Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893) ("The right to exclude or to expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, [is] an inherent and inalienable right of every sovereign and independent nation, essential to its safety, its independence, and its welfare . . . ."); *Ping v. United States*, 130 U.S. 581, 603–04 (1889) ("Jurisdiction over its own territory to that extent is an incident of every independent nation. It is a part of its independence. If it could not exclude aliens it would be to that extent subject to the control of another power."); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) ("The exclusion of aliens is a fundamental act of sovereignty. The right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation. When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing an inherent executive power.").

17.     Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws. *See Fiallo v. Bell*, 430 U.S. 787, 798 (1977) (explaining that matters of immigration concern "policy questions entrusted exclusively to the political branches of our Government," leaving "no judicial authority" for courts "to substitute [their] political judgment for that of the Congress").

18.     Specifically, in 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *See* PRWORA, Pub. L. No. 104-193, 110 Stat. 2268 (1996); IIRIRA, Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996). Those Acts sought to encourage self-sufficiency among immigrants, limit their dependence on public assistance, and prevent public benefits from serving as an incentive for illegal immigration. *See id*.; *see also* 8 U.S.C. § 1601(1) ("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

19.     Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." *Id*. § 1601(2)(A).

20.     Congress also emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id*. § 1601(2)(B).

21.     Moreover, Congress determined that "[i]t is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(5), (6).

22.     As relevant here, PRWORA states: "A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible . . . only through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility." 8 U.S.C. § 1621(d).

23.     But even in such cases, a state may not offer in-state tuition (or "resident tuition") benefits to illegal aliens present in the United States based on their residence in the state, if those

same benefits are denied to American citizens from other states. *See* 8 U.S.C. § 1623(a). IIRIRA included a clear "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." *Id*.

24.    Section 1623(a) provides that:

Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a).

25.    Accordingly, under Section 1623(a), illegal aliens present in the United States are not eligible for postsecondary education benefits based on state residency unless those same benefits are also offered to all American citizens, regardless of their state of residence.

26.    On February 19, 2025, President Trump issued Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders*,[13] ordering Federal Departments and Agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens." *Id*. § 2(a).

27.    On April 28, 2025, President Trump issued Executive Order 14287, *Protecting American Communities From Criminal Aliens*,[14] directing relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by Federal law, or otherwise unenforceable, including State

---

[13] Exec. Order No. 14218, *Ending Taxpayer Subsidization of Open Borders*, 90 Fed. Reg. 10581 (Feb. 19, 2025), https://perma.cc/U2JB-UCDR.

[14] Exec. Order No. 14287, *Protecting American Communities from Criminal Aliens*, 90 Fed. Reg. 18761 (Apr. 28, 2025), https://perma.cc/2RHJ-GB6D.

laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens." *Id*. § 5.

28.    These Executive Orders emphasize that Federal and state governments must not confer greater benefits to illegal aliens present in our Nation than to American citizens. They also reflect Congress's clear aim to reduce incentives for illegal immigration by limiting access to certain public benefits intended for American citizens.

## THE MARYLAND LAWS AND POLICY

### I.   Maryland Makes Illegal Aliens Eligible for Resident Tuition.

29.    Maryland law rewards illegal aliens present in the State with eligibility for in-state tuition based on residency within Maryland, while explicitly denying eligibility for resident tuition to U.S. citizens who are not Maryland residents. *See* Md. Code Ann., Educ. § 15-106.8.

30.    Maryland, like most states, charges two separate tuition rates at Maryland public institutions of higher education: resident and nonresident tuition. *See* Md. Code Ann., Educ. § 15-106.8 (outlining in-state tuition); Md. Code. Ann., Educ. § 16-310(a) (outlining out-of-state tuition fee structure for Maryland community colleges); Md. Code Regs. 13B.07.02.03(C) (policy for tuition structure for community colleges); *see also* Md. Code Ann., Educ. § 10-101(h), (m) (defining Maryland institutions of higher education)[15].

31.    Maryland Public Institutions of Higher Education set different tuition rates for in-state residents and nonresident, out-of-state students. For example, Bowie State University charges

---

[15] "Public institutions of higher education" is a defined term in Maryland law. Md. Code Ann., Educ. § 10-101(h) ("'Institution of higher education' means an institution of postsecondary education that generally limits enrollment to graduates of secondary schools, and awards degrees at either the associate, baccalaureate, or graduate level. 'Institution of higher education' includes public, private nonprofit, and for–profit institutions of higher education.").

Maryland undergraduate student residents approximately $9,894 for tuition and fees for one academic year but charges out-of-state undergraduate students approximately $21,047.[16]

32.     Similarly, Coppin State University charges Maryland undergraduate student residents approximately $7,524 for one year of tuition but charges out-of-state undergraduate students approximately $14,726.[17]

33.     The University of Maryland, College Park campus charges Maryland undergraduate student resident approximately $12,835 for tuition and fees for one academic year but charges out-of-state undergraduate students approximately $44,086.[18]

34.     This discrepancy between resident and nonresident tuition holds across other Maryland public institutions of higher education, its public senior higher education institutions,[19] and its community colleges.[20]

35.     For many years, Section 15-106.8 and Regulation 13B.07.02.03 have rewarded illegal aliens who violate our Nation's immigration laws with eligibility for in-state tuition benefits while denying that same benefit to U.S. citizens who are not Maryland residents.

---

[16]BOR Approved, *FY 2027 Tuition and Fee Schedule*, Bowie State University (Apr. 17, 2026), https://perma.cc/E6FG-A3U7.

[17]BOR Approved, *FY 2027 Tuition and Fee Schedule*, Coppin State University (Apr. 17, 2026), https://perma.cc/M2S9-URTQ.

[18] BOR Approved, *FY 2027 Tuition and Fee Schedule*, University of Maryland, College Park (Apr. 17, 2026), https://perma.cc/2N6S-SWBM.

[19] *See generally* Office of Administration and Finance, *Fiscal Year 2027 USM Schedule of Tuition and Mandatory Fees*, University System of Maryland (Apr. 17, 2026) (listing links to Board of Regents approved FY 2027 tuition and fees for Bowie State University, Coppin State University, Frostburg State University, Salisbury University, Towson University, University of Baltimore, University of Maryland – Baltimore, University of Maryland – Baltimore County, University of Maryland – College Park, University of Maryland Eastern Shore, University of Maryland Global Campus, and The Universities at Shady grove), https://perma.cc/T5HR-CCXC.

[20] *See, e.g.*, Anne Arundel Community College, *Credit Tuition and Fees* (last visited July 02, 2026), https://perma.cc/RS6D-VFC5; Baltimore City Community College, *Paying Tuition and Fees* (last visited July 02, 2026), https://perma.cc/C33D-4JVE; Hagerstown Community College, *Tuition & Fees* (last visited July 02, 2026), https://perma.cc/YBR6-QGJE.

36.     Section 15-106.8 and Regulation 13B.07.02.03 unequivocally make illegal aliens living in Maryland eligible to receive resident tuition in Maryland.

37.     Under Section 15-106.8, an individual other than a "nonimmigrant alien within the meaning of 8 U.S.C. § 1101(a)(15),"[21] including an illegal alien, "shall be exempt from paying the out–of–state tuition rate at a public institution of higher education in the State, and shall be eligible to pay a rate that is equivalent to the resident tuition rate at a public senior higher education institution," if the individual:

(1) "Attended a public or nonpublic secondary school in the State;"

(2) "Graduated from a public or nonpublic secondary school in the State or received the equivalent of a high school diploma in the State;"

(3) "Registers as an entering student in a public institution of higher education in the State not later than 6 years after graduating from a public or nonpublic secondary school in the State or receiving the equivalent of a high school diploma in the State;"

(4) "Provides to the public institution of higher education documentation that the individual or the individual's parent or legal guardian has filed a Maryland income tax return annually for the 2–year period before the academic year in which the tuition rate exemption would apply;" [22]

(5) "In the case of an individual who is not a permanent resident, provides to the public institution of higher education an affidavit stating that the individual will file

---

[21] *See* 8 U.S.C. § 1101(a)(15)(A)-(S) (defining the term "immigrant" to mean every alien except those within the classes of nonimmigrant aliens enumerated in (a)(15)).
[22] As amended by 2026 Md. L. Ch. 799 (H.B. 1530) (changing previous three-year requirement to current two-year requirement).

an application to become a permanent resident within 30 days after the individual becomes eligible to do so;" and

(6) "In the case of an individual who is required to register with the Selective Service System, provides to the public institution of higher education documentation that the individual has complied with the registration requirement."

38.     In implementing the Education Article, the USM Board of Regents published Policy VIII-2.70, "Policy on Student Classification for Admission and Tuition Purposes," which grants in-state status to "individuals, including undocumented immigrants, who . . . meet all the criteria in § 15-106.8 of the Education Article, Annotated Code of Maryland."[23]

39.     Independent of Section 15-106.8, the Student Residency Policy under Md. Code Regs. 13B.07.02.03, which applies to all public and regional Maryland community colleges—with limited exceptions for Baltimore City Community College, *see* Md. Code Regs. 13B.07.01.01(B)—allows illegal aliens to establish residency in Maryland to obtain in-state benefits.

40.     Accordingly, the tuition rate for illegal aliens in Maryland who satisfy Section 15-106.8 or Md. Code Regs. 13B.07.02.03's criteria is the same as the tuition rate for other Maryland residents. *Id.* Conversely, a U.S. citizen who is not eligible for in-state tuition under Section 15-106.8 or Md. Code Regs. 13B.07.02.03, due to residency requirements, is required to pay higher, nonresident tuition (unless an exemption applies).

41.     The impact of Section 15-106.8 granting in-state tuition to illegal aliens in Maryland cannot be overstated. As reported by MHEC, during the Fall 2024 semester, 496 illegal

---

[23] *See* Univ. Sys. of Md. Bd. of Regents, Policy VIII-2.70, Policy on Student Classification for Admission and Tuition Purposes (June 12, 2026), https://perma.cc/C3FN-T5MR, at 8.

aliens were enrolled and receiving in-state tuition across fifteen Maryland community colleges, and 309 illegal aliens were enrolled and receiving in-state tuition across nine public four-year institutions.[24] Combined, from Summer 2024 through Spring 2025, the amount saved by illegal aliens who received in-state tuition was $8,957,356.00—a substantial portion of taxpayer dollars subsidizing education for aliens who break our Nation's immigration laws.[25]

42.     Put simply, Section 15-106.8's requirements and subsequent amendments confer preferential treatment to illegal aliens within our Nation over U.S. citizens on the basis of residence. That clearly contravenes Congress's command in Section 1623(a). And given Maryland twice amended Section 15-106.8 to further expand eligibility for illegal aliens to receive in-state tuition, its violation of Federal law is even more alarming.

## II.  Maryland Makes Illegal Aliens Eligible for Scholarships and Financial Assistance on the Basis of Residence

43.     Maryland law also rewards illegal aliens in the State with eligibility for state-funded scholarships and financial assistance based on residency within Maryland while explicitly denying eligibility for the same state-funded scholarships and assistance to U.S. citizens who are not Maryland residents.

44.     Maryland operates its own state financial aid program via the Maryland College Aid Processing System ("MDCAPS").[26] MDCAPS is MHEC's comprehensive financial aid system that facilitates processing students' Free Application for Federal Student Aid ("FAFSA"), as well as State aid applications.

---

[24] Sec. Sanjay Rai, *Exemptions from Nonresident Tuition for Qualified Children of Undocumented Immigrations*, MHEC (July 2025), https://perma.cc/5TFD-NAP9.
[25] *Id.*
[26] Maryland Higher Education Commission Financial Aid, *What is MDCAPS?*, https://perma.cc/2AWK-35BE (last visited July 08, 2026).

45.     Enabled by Section 15-106.8, MHEC directs undocumented students to fill out the "MHEC One App" to apply for various State financial aid grants and scholarships.[27] Through that application, MHEC provides illegal aliens with access to the Maryland State Financial Aid Application ("MSFAA") and unlocks State scholarship and grant eligibility that is otherwise reserved for Maryland residents.

46.     The MSFAA is specifically set up to encourage and facilitate applications for state financial aid from students who are ineligible to complete the FAFSA—including illegal aliens who are barred from access to Federal Student Aid funds.[28]

47.     Eligibility for Maryland state financial aid programs is similarly based on the residency requirements that Maryland uses to make illegal aliens eligible for in-state tuition. This is because Maryland invites an individual (other than U.S. citizens and nonimmigrant aliens within the meaning of 8 U.S.C. § 1101(a)(15)) to complete the MSFAA if the individual:

(1) is ineligible or unable to complete the FAFSA; and

(2) meets the nonresident exemption as described under Section 15-106.8.[29]

48.     The Secretary of the Maryland Higher Education Commission oversees the State's system of higher education, including the University System of Maryland, the Board of Regents, and the Maryland Office of Student Financial Assistance ("OSFA"), among other offices, departments, and councils. *See* Md. Manual, *supra* note 8.

49.     OSFA, the Secretary, the Maryland Higher Education Commission, the Chancellor, the University System of Maryland, the Board of Regents, and the related public institutions of

---

[27] Maryland Higher Education Commission, *MHEC One App for Undocumented Students FAQS*, https://perma.cc/H24Q-WXGN (last visited July 07, 2026).

[28] *See*, *e.g.*, Md. Code Regs. 13B.08.10.02B(11); MHEC, *Maryland State Financial Aid Application User Guide 2023-2024*, at 3, https://perma.cc/H3Z5-HAYV.

[29] *See* Md. Code Regs. 13B.08.10.02; *see also* MHEC, *supra* note 27.

higher education system Presidents and Boards administer scholarships, grants, and funds designed to help students pay for college tuition and related expenses. *See id.*

50.     OSFA "is responsible for all State student financial aid programs, administering over $100 million in assistance to Maryland students who wish to further their education beyond high school." *See id.*; *see also* Md. Code Ann., Educ. § 18-204 (defining the powers and duties of the Maryland Office of Student Financial Assistance).

51.     Under Maryland law, illegal aliens in the State are eligible on the same terms as other Maryland residents for state-funded financial assistance at state-funded public and state-approved private, independent nonprofit institutions of higher education.

52.     For example, pursuant to Md. Code Ann., Educ. § 18-303, OSFA administers the Delegate Howard P. Rawlings Educational Excellence Awards Program, which creates two types of awards 1) Guaranteed Access (GA) Grant, which covers 100 percent of educational costs for "the neediest" eligible applicants, and 2) Educational Assistance Grant, which assists with educational costs for "low and moderate income" eligible applicants. Md. Code Ann., Educ. § 18-301 *et seq.*; *see also* Md. Code Regs. 13B.08.10.01; 13B.08.10.02(b)(5) (defining eligibility for in-state benefits in accordance with Title 15 of the Maryland Education code).

53.     To be eligible for either award under the Educational Excellence Awards Program, a student must be accepted for admission at a postsecondary institution in Maryland. *See* Md. Code Ann., Educ. § 18-303(a); Md. Code Regs. 13B.08.10.03.[30]

54.     Eligibility for a financial award under the Educational Excellence Awards Program also turns on residence. Specifically, applicants must "be a resident of [Maryland]," Md. Code

---

[30] *See also* Financial Aid Program Descriptions, *Guaranteed Access (GA) Grant*, MARYLAND HIGHER EDUCATION COMMISSION, https://perma.cc/S4ZK-KLFN (last visited July 07, 2026).

Ann., Educ. § 18-303, or "eligible for in-State tuition under this article," *id.*, which incorporates Section 15-106.8's in-state tuition eligibility criteria.

55.    This residency requirement is further confirmed by OSFA's guidelines, which allow eligibility for in-state tuition via Section 15-106.8 to satisfy the Maryland residency requirement.[31]

56.    In addition to other need-based scholarships and grants,[32] MHEC OSFA administers certain Legislative and Career/Occupation-Based Grants and Scholarships. *See, e.g.*, Md. Code Ann., Educ. §§ 18-401 through 18-507, § 18-603.1, § 18-708.

57.    In addition to specific requirements, such as class rank, financial need, program enrollment, planned occupation, and test scores, illegal alien eligibility for many Maryland State Scholarships is determined by their qualification for in-state tuition under Section 15-106.8 and is therefore based on residency. *See, e.g.*, Md. Code Ann., Educ. § 18-402(b)(1) (conditioning eligibility on being "eligible for in–State tuition under this article," which includes Section 15-106.8); Md. Code Ann., Educ. § 18-502(b) (same); Md. Code Ann., Educ. 18-605(b) (same).

58.    The Maryland Senatorial Scholarship is one such residence-based financial aid program administered by OSFA. *See* Md. Code Ann., Educ. § 18-401.[33]

---

[31] *Id.*

[32] The GA Grant and Educational Assistance Grant are just two examples of seven Maryland OSFA need-based grants and scholarships made available to illegal aliens because of Section 15-106.8. *See* Preparing, *State Financial Aid Programs*, MARYLAND HIGHER EDUCATION COMMISSION, https://perma.cc/XND9-YT9S (last visited July 07, 2026) (providing information on the five other need-based scholarships and grants: the Campus-Based Educational Assistance Grant, the 2+2 Transfer Scholarship, the Part-Time Grant, the Graduate & Professional Scholarship Program, and the Maryland Community College Promise Scholarship.).

[33] Financial Aid Program Descriptions, *State Senatorial Scholarship*, Maryland Higher Education Commission, https://perma.cc/W8KP-RWUJ (last visited July 08, 2026).

59.    "The Maryland Senatorial Scholarship is offered to Maryland residents who plan to pursue a postsecondary credential full-time (12+ credits undergraduate or 9+ credits graduate per semester) or part-time (6-11 credits undergraduate or 6-8 credits graduate per semester) at a two-year or four-year Maryland college, university or private career school." *Id.*; *see also* Md. Code Ann., Educ. § 18-402; Md. Code Regs. 13B.08.04.01.

60.    In addition to other requirements, illegal aliens are eligible for the Maryland Senatorial Scholarship based on residency under Section 15-106.8. That is because the statute requires a student "[b]e eligible for in-state tuition under this article," which is a reference to Section 15-106.8. Md. Code Ann., Educ. § 18-402(b)(1).

61.    Thus, the Maryland Senatorial Scholarship is just one of many examples of scholarships and grants Maryland makes available to Maryland resident illegal aliens, while barring U.S. citizens who are residents of other states from accessing the same.

62.    Additionally, under Maryland law, illegal aliens are eligible for other talent-based, occupation-based, and unique-population-based scholarships and grants based on residency: the Delegate Scholarship, *see* Md. Code Ann., Educ. § 18-502(b) (conditioning eligibility on being "eligible for in–State tuition under this article"); the Cybersecurity Public Service Scholarship, *see* Md. Code Regs. 13B.08.20.03 (conditioning eligibility on qualifying "for in-State tuition under Education Article, Title 15"); the Richard W. Collins III Leadership With Honor Scholarship, *see* Md. Code Ann., Educ. § 18-605 (conditioning eligibility on qualifying "for in-state tuition"); the Near Completer Grant, *see* Md. Code Regs. 13B.08.07.03 (conditioning eligibility on being a "Maryland resident of eligible for in-State tuition in accordance with Education Article, Title 15, Annotated Code of Maryland"), and more.[34]

---

[34] *See generally* Md. Code Regs. 13B.08 (listing all Maryland financial aid programs enumerated

63.    Each of these scholarship and grant programs, notwithstanding various additional eligibility requirements, provide eligibility to illegal aliens on the basis of residence under Section 15-106.8 and Md. Code Regs. 13B.07.02.03.

**CLAIMS FOR RELIEF**

**COUNT I**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(EXPRESS PREEMPTION OF MD. CODE ANN., EDUC. § 15-106.8 – TUITION)**

64.    The United States hereby incorporates paragraphs 1-63 of the Complaint as if fully stated herein.

65.    The Supremacy Clause of the United States Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof … shall be the supreme Law of the Land … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Art. VI, cl. 2.

66.    The preemption doctrine is derived from the Supremacy Clause. Express preemption occurs when Congress includes express language within the statute indicating its preemptive intent. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

67.    Section Md. Code Ann., Educ, § 15-106.8(b) provides that an undocumented alien may be eligible for in-state tuition if they can show that they attended high school in the state, graduated from high school in the state, and they or their guardian filed income tax returns in the state in the two years immediately preceding the academic year for which the tuition abatement would apply.

68.    Section 15-106.8 is expressly preempted by 8 U.S.C. § 1623(a), which contains an express preemption clause and that provides that "an alien who is not lawfully present in the United

by Maryland Code Regulations).

19

States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a).

69.     Section 15-106.8 establishes entitlement to in-state tuition based on residency within Maryland by relying on high school attendance in the state, high school graduation in the state, and the payment of income taxes in the state.

70.     Section 15-106.8 further establishes entitlement to in-state tuition based on residency within Maryland in requiring that to retain the tuition benefit, "an individual shall use an address in the State on the Maryland income tax return of the individual or the individual's parent or legal guardian annually until the individual is awarded a degree from the public institution of higher education." 15-106.8(e)(2).

71.     Section 15-106.8 does not extend eligibility for such benefits to U.S. citizens of other states.

72.     Accordingly, Md. Code Ann., Educ. § 15-106.8, is preempted and unconstitutional.

## COUNT II
## VIOLATION OF THE SUPREMACY CLAUSE
## (EXPRESS PREEMPTION OF STATUTES AND REGULATIONS
## INCORPORATING § 15-106.8 – FINANCIAL AID)

73.     The United States hereby incorporates paragraphs 1-72 of the Complaint as if fully stated herein.

74.     In addition to in-state tuition rates, Maryland also rewards illegal aliens in the State with eligibility for state-funded financial aid, such as scholarships and grants, based on residency within Maryland while denying eligibility for the same state-funded financial aid to nonresident U.S. citizens.

20

75. Several Maryland statutes and regulations incorporate Section 15-106.8's in-state tuition eligibility criteria to extend eligibility for financial aid to illegal aliens based on residence, including Md. Code Ann., Educ. §§ 18-303, 18-402, 18-502, 18-605, and Md. Code Regs. 13B.08.07.03, 13B.08.10.01, 13B.08.10.02, 13B.08.20.03.

76. Accordingly, to the extent that Md. Code Ann., Educ. §§ 18-303, 18-402, 18-502, 18-605, and Md. Code Regs. 13B.08.07.03, 13B.08.10.01, 13B.08.10.02, 13B.08.20.03 incorporate the in-state eligibility criteria to extend eligibility for financial aid to illegal aliens, they are expressly preempted and unconstitutional.

## COUNT III
## VIOLATION OF THE SUPREMACY CLAUSE
## (EXPRESS PREEMPTION OF MD. CODE REGS. 13B.07.02.03 – RESIDENCY POLICY)

77. The United States hereby incorporates paragraphs 1-76 of the Complaint as if fully stated herein.

78. Md. Code Regs. 13B.07.02.03, provides that community colleges in Maryland must establish a policy for classification by domicile for tuition purposes, and an individual's immigration status may not preclude award of Maryland residency if the individual has the legal capacity to establish domicile in Maryland.

79. Md. Code Regs. 13B.07.02.03 is expressly preempted by 8 U.S.C. § 1623(a) which contains an express preemption clause and which provides that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a).

80.     Md. Code Regs. 13B.07.02.03 violates federal immigration law because it extends eligibility for postsecondary financial assistance to illegal aliens on the basis of residence in the State but does not provide U.S. Citizens of other states with eligibility for the same benefits without regard to residence.

81.     Accordingly, Md. Code Regs. 13B.07.02.03 is preempted and unconstitutional.

## COUNT IV
## VIOLATION OF THE SUPREMACY CLAUSE
## (EXPRESS PREEMPTION OF MD. CODE REGS. 13B.07.02.03 – RESIDENCY POLICY)

82.     The United States hereby incorporates paragraphs 1-81 of the Complaint as if fully stated herein.

83.     Md. Code Regs. 13B.07.02.03, promulgated by Defendant Maryland Higher Education Commission, violates Federal immigration law because it expressly contravenes Congress's requirement that eligibility for State and local public benefits can "only" be provided to illegal aliens through "the enactment of a State law" that "affirmatively provides for such eligibility." 8 U.S.C. § 1621(d).

84.     Accordingly, Md. Code Regs. 13B.07.02.03 is preempted and unconstitutional.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

1.     That this Court enter a judgment declaring Md. Code Ann., Educ. § 15-106.8 and Md. Code Regs. 13B.07.02.03, and all statutes and regulations incorporating their unconstitutional eligibility requirements, violate the Supremacy Clause because they extend eligibility for postsecondary education benefits to illegal aliens, and are therefore unconstitutional and invalid;

2.     That this Court enter a judgment declaring Md. Code Regs. 13B.07.02.03 violates the Supremacy Clause to the extent it extends State and local public benefits to illegal aliens

22

through a regulation promulgated by an agency rather than by State law enactment, and is therefore unconstitutional and preempted;

3.    That this Court issue a permanent injunction that prohibits Defendants as well as their officers, agents, servants, employees, and attorneys and anyone in active concert or participation with them from enforcing Md. Code Ann., Educ. § 15-106.8 or Md. Code Regs. 13B.07.02.03, or any law that relies on them, to the extent that they extend eligibility for postsecondary education benefits to illegal aliens;

4.    That this Court issue a permanent injunction that prohibits Defendants as well as their officers, agents, servants, employees, and attorneys and anyone in active concert or participation with them from enforcing Md. Code Regs. 13B.07.02.03, because it extends State and local public benefits to illegal aliens through rule rather than by State law enactment;

5.    That this Court award the United States its costs and fees in this action; and

6.    That this Court award any other relief it deems just and proper.

DATED: July 16, 2026

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANNA EDWARDS
Counsel to the Associate Attorney General

JACQUELINE COLEMAN SNEAD
Deputy Director

*s/ Alexandra McTague Schulte*
Senior Litigation Counsel
United States Department of Justice
Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386, Washington, D.C. 20044
Tel: 202-718-0483
Email: alexandra.schulte@usdoj.gov

*Attorneys for the United States*

23