**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF MARYLAND, MARYLAND HIGHER EDUCATION COMMISSION, UNIVERSITY SYSTEM OF MARYLAND BOARD OF REGENTS,<br><br>Defendants. | Case No. 1:26-cv-02796-SAG |

**MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................ 1

BACKGROUND ........................................................ 3

I. Federalism Principles ........................................................ 3

II. Relevant Federal Law ........................................................ 4

III. Relevant Maryland Law ........................................................ 5

IV. This Lawsuit ........................................................ 9

LEGAL STANDARD ........................................................ 9

ARGUMENT ........................................................ 10

I. Section 1623(a) has no preemptive effect because it purports to regulate states, not private actors. ........................................................ 10

II. Section 1623(a) does not expressly preempt the Maryland Dream Act. ........................................................ 13

A. The Maryland Dream Act does not provide postsecondary education benefits "on the basis of residence." ........................................................ 14

1. The Maryland high school requirement is not based on residence because nonresidents can attend and graduate from Maryland high schools. ........................................................ 16

2. The income tax return requirement is also not based on residence because nonresidents can file income tax returns for work performed in the State. ........................................................ 18

B. The Maryland Dream Act makes U.S. citizens eligible for postsecondary education benefits "without regard" to their residence in Maryland. ........................................................ 19

1. U.S. citizens who are not Maryland residents are eligible for in-state tuition under the Maryland Dream Act. ........................................................ 20

2. Nonresident U.S. citizens have other ways to be eligible for in-state tuition. ........................................................ 22

3. Interpreting Section 1623(a) to require that a state provide postsecondary education benefits to *all* U.S. citizens raises serious constitutional concerns. ........................................................ 24

III. Federal law does not expressly preempt MHEC's Student Residency Policy. ........................................................ 27

CONCLUSION ........................................................ 30

## TABLE OF AUTHORITIES

### Case Law

*Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751 (4th Cir. 2018) .......... 4, 13
*Altria Grp., Inc. v. Good*, 555 U.S. 70 (2008) .......... 3, 25
*American Petroleum Inst. v. Cooper*, 718 F.3d 347 (4th Cir. 2013) .......... 26
*Arizona v. United States*, 567 U.S. 387 (2012) .......... 4
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 10
*Barbier v. Connolly*, 113 U.S. 27 (1884) .......... 26
*Barton v. Barr*, 590 U.S. 222 (2020) .......... 4
*Bates v. Dow Agrosciences LLC,* 544 U.S. 431 (2005) .......... 25
*Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582 (2011) .......... 4
*Cipollone v. Liggett Group, Inc.,* 505 U.S. 504 (1992) .......... 26
*CMH Mfg., Inc. v. Catawba Cty.*, 994 F. Supp. 697 (W.D.N.C. 1998) .......... 26
*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327 (2020) .......... 15
*CSX Transp. Inc. v. Easterwood*, 507 U.S. 658 (1993) .......... 27
*Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228 (4th Cir. 2016) .......... 15
*Gregory v. Ashcroft*, 501 U.S. 452 (1991) .......... 3
*Guzman v. Acuarius Night Club LLC*, 167 F.4th 217 (4th Cir. 2026) .......... 10
*Martinez v. Regents of Univ. of Calif.*, 241 P.3d 855 (Cal. 2010) .......... 2, 12, 13, 17, 24 25
*Maryland v. Louisiana*, 451 U.S. 725 (1981) .......... 3
*Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255 (4th Cir. 2005) .......... 26
*Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782 (2014) .......... 25
*Murphy v. NCAA*, 584 U.S. 453 (2018) .......... passim
*N. Virginia Hemp & Agric., LLC v. Virginia*, 125 F.4th 472 (4th Cir. 2025) .......... 4
*New York v. United States*, 505 U.S. 144 (1992) .......... 11, 12
*Niz-Chavez v. Garland*, 593 U.S. 155 (2021) .......... 25
*Plyler v. Doe*, 457 U.S. 202 (1982) .......... 3
*Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115 (2016) .......... 4
*Quarles v. United States*, 587 U.S. 645 (2019) .......... 26
*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947) .......... 27
*Tafflin v. Levitt*, 493 U.S. 455 (1990) .......... 3
*Toll v. Moreno*, 458 U.S. 1 (1982) .......... 29
*United States v. Illinois*
No. 25-CV-1691-DWD, 2026 WL 2137256 (S.D. Ill. July 24, 2026) .......... 12, 17
*United States v. Nebraska*, 2026 WL 1584862 (D. Neb. June 3, 2026) .......... 17
*United States v. Texas*, 181 F.4th 548 (5th Cir. 2026) .......... 12, 16
*United States v. Walz*, 825 F. Supp. 3d 897 (D. Minn. 2026) .......... 2, 15, 17, 21
*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) .......... 15, 16
*Vlandis v. Kline*, 412 U.S. 441 (1973) .......... 26

*Young Conservatives Texas Found. v. Smatresk*, 73 F.4th 304 (2023) .......... 30

**Statutes and Regulations**

8 U.S.C. § 1101(a)(15) .......... 7, 20, 23
8 U.S.C. § 1101(a)(3) .......... 4
8 U.S.C. § 1101(a)(33) .......... 15
8 U.S.C. § 1252(d)(1) .......... 25
8 U.S.C. § 1621(d) .......... 5, 9, 28
8 U.S.C. § 1623(a) .......... passim
8 U.S.C. § 1641(a) .......... 15
COMAR 13B.08.10.01 .......... 9
COMAR 13B.08.10.02 .......... 9
COMAR 13B.07.02.03 .......... passim
COMAR 13B.07.02.03(A)(3) .......... 29
COMAR 13B.07.02.03(A)-(B) .......... 6
COMAR 13B.07.02.03(F) .......... 23
COMAR 13B.08.07.03 .......... 9
COMAR 13B.08.10.03 .......... 9
Md. Code Ann., Educ. § 10-101(h) .......... 5
Md. Code Ann., Educ. § 15-106.1 .......... 7
Md. Code Ann., Educ. § 15-106.12(b) .......... 7
Md. Code Ann., Educ. § 15-106.4 .......... 7
Md. Code Ann., Educ. § 15-106.8 .......... passim
Md. Code Ann., Educ. § 15-106.8(b) .......... 8
Md. Code Ann., Educ. § 15-106.8(b)(2) .......... 14
Md. Code Ann., Educ. § 15-106.8(b)(4) .......... 14
Md. Code Ann., Educ. § 15-106.8(c) .......... 7
Md. Code Ann., Educ. § 15-106.8(d) .......... 7
Md. Code Ann., Educ. § 15-106.8(e)(1)(2) .......... 14
Md. Code Ann., Educ. § 15-106.8(e)(2) .......... 8, 19
Md. Code Ann., Educ. § 16-310(6)(i) .......... 7
Md. Code Ann., Educ. § 16-310(a)(3)(i) .......... 22
Md. Code Ann., Educ. § 16-310(a)(5)(i) .......... 7
Md. Code Ann., Educ. § 18-303 .......... 9
Md. Code Ann., Educ. § 18-402 .......... 9
Md. Code Ann., Educ. § 18-502 .......... 9
Md. Code Ann., Educ. § 18-605 .......... 9
Md. Code Ann., Educ. § 7-101(2)(i)(1) .......... 16
Md. Code Ann., Educ. §12-109(e)(7) .......... 5
Md. Code Ann., Gen. Provis. § 1-110 .......... 20

Md. Code Ann., Tax-Gen. § 10-806(a) .......... 18
Md. Code. Ann., Educ. § 11-105 .......... 1, 22
Md. Code. Ann., Educ. § 12-101 .......... 1
Md. Code. Ann., Educ. § 12-102 .......... 1
Pub. L. No. 104–193, 110 Stat. 2105 (1996) .......... passim
Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996) .......... 5, 9, 10, 27

**Miscellaneous Authorities**

Comptroller of Md., Maryland Form 502 – Resident Income Tax Form, https://www.marylandcomptroller.gov/content/dam/mdcomp/tax/forms/2025/502.pdf [https://perma.cc/MN2L-BYD5] .......... 19
Comptroller of Md., Maryland Form 505 – Nonresident Income Tax Form, https://www.marylandcomptroller.gov/content/dam/mdcomp/tax/forms/2025/505.pdf [https://perma.cc/65PE-N7YZ] .......... 19
Montgomery County Public Schools (MCPS), *Regulation JEA-RE, Tuition-Based Enrollment*, https://ww2.montgomeryschoolsmd.org/departments/policy/pdf/jeare.pdf [https://perma.cc/8ETG-STSU] .......... 16
U.S. Const. amend. X .......... 11
U.S. Const. art. VI, cl. 2 .......... 3
Univ. Sys. of Md. Bd. of Regents, *VIII-2.70—Policy on Student Classification for Admission and Tuition Purposes*, https://www.usmd.edu/regents/bylaws/SectionVIII/VIII-2.70.pdf (last amended June 12, 2026) .......... 6

## INTRODUCTION

In 2011, the Maryland General Assembly enacted the Maryland Dream Act to make higher education at public institutions more affordable for students—both citizens and certain noncitizens, including undocumented immigrants—with established ties to the State. One year later, Maryland voters reaffirmed their support for this law by approving the Maryland Dream Act in a statewide referendum. Pursuant to this clear mandate, the State of Maryland, University System of Maryland (USM) Board of Regents,[1] and the Maryland Higher Education Commission (MHEC)[2] have expanded educational opportunities for students who have attended and graduated from Maryland high schools and who have filed income tax returns in the State.

Nearly fifteen years later, the United States now asserts that the Maryland Dream Act runs afoul of longstanding federal immigration statutes limiting noncitizen eligibility for certain public benefits. The federal government contends that the Maryland Dream Act is expressly preempted by 8 U.S.C. § 1623(a), which provides that "an alien who is not lawfully present . . . shall not be eligible on the basis of residence . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." But the federal government strains to reach this incorrect conclusion. Not only does its sweeping interpretation of Section 1623(a) raise serious constitutional concerns, it also misunderstands how the Maryland Dream Act operates, and the preemption claim thus fails as a matter of law.

---

[1] The University System of Maryland is Maryland's public system of higher education, comprising 12 universities and governed by a Board of Regents. Md. Code. Ann., Educ. §§ 12-101–12-102.

[2] The Maryland Higher Education Commission is Maryland's coordinating entity for public and private postsecondary education. *Id.* § 11-105.

To start, Section 1623 is not a valid preemption statute. It does not regulate the conduct of private actors but instead purports to direct state legislatures by imposing limits on their legislative authority regarding postsecondary education benefits for undocumented immigrants—something which the Constitution does not permit and which the Supreme Court foreclosed in *Murphy v. National Collegiate Athletic Association (NCAA)*, 584 U.S. 453 (2018).

But even if Section 1623 contained a valid preemption provision (it does not), the statute does not expressly preempt the Maryland Dream Act for two independent reasons. First, the Maryland Dream Act does not provide any postsecondary education benefit "on the basis of residence" within Maryland. Instead, eligibility turns on residence-neutral criteria—such as attending and graduating from a Maryland high school and filing Maryland income tax returns—criteria that nonresidents can satisfy. Second, U.S. citizens and nationals are eligible for in-state tuition status under the Maryland Dream Act "without regard" to Maryland residence.

Indeed, courts throughout the country have already rejected the federal government's express-preemption challenges to state laws similar to Maryland's that do not condition eligibility on residency, but rather on residence-neutral factors such as high school attendance and graduation. *See United States v. Walz*, 825 F. Supp. 3d 897 (D. Minn. 2026); *Martinez v. Regents of Univ. of Calif.*, 241 P.3d 855 (Cal. 2010).

The United States' challenge to MHEC's Residency Policy, Md. Code Regs. (COMAR) 13B.07.02.03, fails as well. The federal government argues that Section 1623(a) and 8 U.S.C. § 1621(d), which restricts a state's ability to make undocumented immigrants "eligible" for certain public benefits, expressly preempt this regulation. As a threshold matter, Section 1621(d) and 1623(a) do not constitute valid preemption provisions. But in any event, the federal government misinterprets the MHEC regulation, which, as relevant here, clarifies that immigration status does

not preclude an individual from establishing Maryland residence if the individual has the legal capacity to establish domicile under Maryland law. That provision of the regulation does not confer noncitizens eligibility for a benefit; it merely precludes an automatic bar. Because the regulation plainly falls outside the purported preemptive scope of Sections 1623 and 1621, the federal government's express preemption claims here also fail as a matter of law.

As the Supreme Court recognized in *Plyler v. Doe*, education "has a fundamental role in maintaining the fabric of our society" and "provides the basic tools by which individuals might lead economically productive lives to the benefit of us all." 457 U.S. 202, 221 (1982). The Maryland Dream Act aims to provide these tools to students with established ties to Maryland, including but not limited to undocumented immigrants. The federal government cannot override the State's longstanding commitment to expanding access to higher education.

For these reasons, the Court should dismiss the United States' complaint with prejudice.

## BACKGROUND

### I. Federalism Principles

In "our federal system, the States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause." *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990). Under the Supremacy Clause, federal law is the "supreme Law of the Land." U.S. Const. art. VI, cl. 2. As a result, "state laws that conflict with federal law are 'without effect.'" *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). But the states have "substantial sovereign authority" under this constitutional system. *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991). "This federalist structure of joint sovereigns preserves to the people numerous advantages[,]" including "assur[ing] a decentralized government that will be more sensitive to the diverse needs of a heterogeneous society[.]" *Id.* at 458.

Federal law can preempt state law in three ways: express preemption, conflict preemption, and field preemption. *See Murphy v. NCAA*, 584 U.S. 453, 477 (2018). With respect to the first type of preemption—the only type of preemption at issue in this case—"Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision." *Arizona v. United States*, 567 U.S. 387, 399 (2012) (quoting *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 592 (2011)). "To determine if Congress clearly expressed an intent to preempt state law," courts ask "if the text and structure of the federal statute shows Congress's preemptive purpose." *N. Virginia Hemp & Agric., LLC v. Virginia*, 125 F.4th 472, 492–93 (4th Cir. 2025). Ultimately, "[w]hen faced with an express preemption clause, the text itself 'contains the best evidence of Congress' preemptive intent.'" *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 761–62 (4th Cir. 2018) (quoting *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125, (2016)).

## II. Relevant Federal Law[3]

In 1996, Congress enacted two federal statutes that address noncitizen eligibility for public benefits—the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, *see* Pub. L. No. 104–193, 110 Stat. 2105 (1996), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, *see* Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996). As

[3] The United States' complaint uses the term "illegal alien," whereas the Maryland Dream Act uses the term "undocumented immigrant." Neither term, however, is used in the federal statutes at issue here. Because relevant federal law uses neither phrase, unless quoting directly from other sources, this brief uses the term "undocumented immigrant" to refer to a person who is not lawfully present in the United States, and "noncitizen" to refer to a person who is not a U.S. citizen or national. *Cf. Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'") (citing 8 U.S.C. § 1101(a)(3)).

relevant here, both federal statutes limit how states may make undocumented immigrants eligible for certain public benefits.

In a section titled "Aliens who are not qualified aliens or nonimmigrants ineligible for State and local public benefits," federal law provides, in relevant part:

> A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible . . . only through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility.

8 U.S.C. § 1621(d).

In a section titled "Limitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits," federal law provides, in relevant part:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

*Id.* § 1623(a).

## III. Relevant Maryland Law

Maryland law grants public institutions of higher education[4] broad authority to set tuition rates and classify students as in-state or out-of-state for tuition purposes. *See* Md. Code Ann., Educ. §12-109(e)(7) ("Subject to the authority and applicable regulations and policies of the [USM] Board of Regents, each [USM] president shall . . . set tuition and fees[.]"); *id.* § 16-103(j)

---

[4] An "[i]institution of higher education" means "an institution of postsecondary education that generally limits enrollment to graduates of secondary schools, and awards degrees at either the associate, baccalaureate, or graduate level" and includes "public, private nonprofit, and for-profit institutions of higher education." Educ. § 10-101(h).

("Each board of [community college] trustees may charge students reasonable tuition and fees set by it with a view to making college education available to all qualified individuals at low cost.").

Pursuant to these laws, higher education governing bodies have adopted tuition policies. As relevant here, the USM Board of Regent's Policy on Student Classification for Admission and Tuition Purposes [hereinafter "USM Student Classification Policy"][5] recognizes "the categories of in-state and out-of-state residency for the purpose of admission and assessing tuition at USM institutions." USM Student Classification Policy at 1. Generally speaking, to qualify for in-state status, a student must demonstrate that they are a permanent Maryland resident. *Id.*

MHEC's Student Residency Policy similarly requires that a community college board of trustees adopt and publish "a policy governing classification of students by domicile for tuition purposes" and that this policy shall distinguish at least the following categories of students: (1) residents of the county or counties that support the colleges; (2) Maryland residents from outside the county or counties that support the college; and (3) out-of-state residents. COMAR 13B.07.02.03(A)-(B). MHEC's regulation provides that an "individual's immigration status may not preclude award of Maryland residency under th[e] [community college] policy if the individual has the legal capacity to establish domicile in Maryland." *Id.* 13B.07.02.03(A)(3). The MHEC regulation further provides that out-of-state students shall pay tuition in accordance with Section 16-310(a) of the Education Article (setting out-of-state fee), and that out-of-county or out-of-region students shall pay tuition in accordance with Section 16-310(b) of the Education Article (setting out-of-county fee). *Id.* 13B.07.02.03(C)(1)-(2).

[5] *See* Univ. Sys. of Md. Bd. of Regents, *VIII-2.70—Policy on Student Classification for Admission and Tuition Purposes*, https://www.usmd.edu/regents/bylaws/SectionVIII/VIII-2.70.pdf (last amended June 12, 2026).

Notwithstanding these default policies, Maryland law also requires that public institutions of higher education waive or reduce tuition rates, or waive state residency requirements, for certain categories of individuals.[6] The "Maryland Dream Act" [or the "Act"] is one example of such a law.

Enacted in 2011, the Maryland Dream Act exempts from payment of the nonresident tuition rate certain qualified students with established ties to the State. *See* 2011 Md. Laws, ch. 191 (enacting Educ. § 15-106.8). Specifically, the Maryland Dream Act permits both citizens and certain noncitizens[7] to "be eligible to pay a rate that is equivalent to the resident tuition rate at a public senior higher education institution" if the individual meets certain requirements. Educ. § 15-106.8(c); *see also id.* § 15-106.8(d) (describing eligibility for tuition rate at a community college equivalent to in-county tuition rate). It provides in relevant part:

> (b) Notwithstanding any other provision of this article, an individual shall be exempt from paying the out-of-state tuition rate at a public institution of higher education in the State, and shall be eligible for the tuition rates described . . . [in] this section, if the individual:
>
> (1) Attended a public or nonpublic secondary school in the State;

---

[6] *See, e.g.*, Educ. § 15-106.1 (waives tuition for qualified foster care recipients and homeless youth); *id.* § 15-106.4 (exempts qualified active service members and their spouses and financially dependent children from paying nonresident tuition); *id.* § 15-106.12(b) (exempts spouses and financially dependent children of a State or local public safety employee who died in the line of duty from paying out-of-state or out-of-county tuition, regardless of their state or county of residence); *id.* § 16-310(a)(5)(i) (permitting "[e]ach board of community college trustees [to] waive the out-of-state fee . . . for a student who is employed by a business located in the county that supports the community college"); *id.* § 16-310(6)(i) (requiring "[e]ach board of community college trustees [to] waive the out-of-state fee . . . for a student who resides in th[e] State but does not meet the in-State residency requirement for tuition purposes and is a public school teacher employed by a county board if" certain requirements are met).

[7] Both citizens and noncitizens can take advantage of the Dream Act. The only exclusion is "nonimmigrant aliens." Educ. § 15-106.8(a) (defining "individual" to "include[] an undocumented immigrant individual" and "not include a nonimmigrant alien within the meaning of 8 U.S.C. § 1101(a)(15)"). The "nonimmigrant alien" category includes, for example, tourists and foreign diplomats. *See* 8 U.S.C. § 1101(a)(15).

> (2) Graduated from a public or nonpublic secondary school in the State or received the equivalent of a high school diploma in the State;
>
> (3) Registers as an entering student in a public institution of higher education in the State not later than 6 years after graduating from a public or nonpublic secondary school in the State or receiving the equivalent of a high school diploma in the State;
>
> (4) Provides to the public institution of higher education documentation that the individual or the individual's parent or legal guardian has filed a Maryland income tax return annually for the 2-year period before the academic year in which the tuition rate exemption would apply;
>
> (5) In the case of an individual who is not a permanent resident, provides to the public institution of higher education an affidavit stating that the individual will file an application to become a permanent resident within 30 days after the individual becomes eligible to do so; and
>
> (6) In the case of an individual who is required to register with the Selective Service System, provides to the public institution of higher education documentation that the individual has complied with the registration requirement.

*Id.* § 15-106.8(b).

The Maryland Dream Act further provides that, to maintain tuition status, an individual or their parent or guardian must, *inter alia*, use a Maryland address on their (or their parent or guardian's) Maryland income tax return annually until they receive a degree from the public institution of higher education. *Id.* § 15-106.8(e)(2).

Maryland law also establishes scholarship and financial aid programs. For example, the Delegate Howard P. Rawlings Educational Excellence Award provides students need-based financial aid awards. The Maryland Senatorial and Delegate Scholarships, offered and awarded through Maryland state senators and delegates, also provide students financial awards. The Near Completer Grant Program provides financial assistance to students who were previously enrolled in a degree program but did not complete it and plan to re-enroll. Students who are eligible for in-state tuition status under relevant Maryland laws, including the Maryland Dream Act, are eligible to apply for these scholarships and other financial assistance provided by the State of Maryland and administered by MHEC.

## IV. This Lawsuit

On July 16, 2026, the United States filed this lawsuit against the State of Maryland, USM Board of Regents, and MHEC. *See* Compl. The Complaint alleges that Maryland law extends eligibility to undocumented individuals for postsecondary education in-state tuition and state-funded financial aid in violation of the Supremacy Clause. *See* Compl. ¶ 4. The Complaint raises four express preemption claims, asserting that federal law, 8 U.S.C. § 1623(a), expressly preempts the Maryland Dream Act, Educ. § 15-106.8 (Count One), Compl. ¶¶ 64–72; Section 1623(a) expressly preempts the following Maryland laws and regulations, Educ. §§ 18-303, 18-402, 18-502, and 18-605, and COMAR 13B.08.07.03, 13B.08.10.01, 13B.08.10.02, and 13B.08.10.03,[8] to the extent these state laws and regulations incorporate the Maryland Dream Act's in-state tuition eligibility criteria (Count Two), Compl. ¶¶ 73–76; Section 1623(a) expressly preempts MHEC's Student Residency Policy, COMAR 13B.07.02.03 (Count Three), Compl. ¶¶ 77–81; and federal law, 8 U.S.C. § 1621(d), expressly preempts MHEC's Student Residency Policy (Count Four), Compl. ¶¶ 82–84.

## LEGAL STANDARD

Defendants move to dismiss this action for failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) "presents a pure question of law, which simply inquires whether the complaint alleges sufficient factual matter, accepted as true, to provide

[8] This appears to be a non-exhaustive list of Maryland laws and regulations that address eligibility for state scholarships and financial assistance. They incorporate the definition of in-state tuition status from other areas of the Education Article, including the Dream Act. *See* Md. Code Ann., Educ. § 18-402 (describing eligibility for senatorial scholarships, including that a student be eligible for in-state tuition); *id.* § 18-502 (explaining that a member of the House of Delegates "may select any individual who is eligible for in-State tuition under this article as a recipient of the scholarship"); *see also, e.g.*, COMAR 13B.08.07.03 (describing eligibility for the Near Completer Grant Program, including that a student "[i]s . . . eligible for in-State tuition in accordance with Education Article, Title 15, Annotated Code of Maryland").

a sufficient basis 'to state a claim to relief that is plausible on its face.'" *Guzman v. Acuarius Night Club LLC*, 167 F.4th 217, 221 (4th Cir. 2026) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In assessing a motion under Rule 12(b)(6), a court need not accept legal conclusions set forth in the complaint. *Iqbal*, 556 U.S. at 678.

## ARGUMENT

Section 1623 cannot support the United States' express-preemption challenge to the Maryland Dream Act for several reasons. Section 1623(a) has no preemptive effect because it purports to directly regulate states, not private actors. But even assuming it is a valid preemption provision, Section 1623(a) does not expressly preempt the Maryland Dream Act. The Act does not make individuals eligible for postsecondary education benefits "on the basis of residence." But even assuming that eligibility is based on residence, the Maryland Dream Act also makes certain U.S. citizens and nationals eligible for postsecondary education benefits "without regard" to their residence in Maryland. Further, interpreting Section 1623(a) to require states to offer in-state tuition and related education benefits to all U.S. citizens and nationals, regardless of residence, would force states to overhaul their higher education tuition systems and subsidize nationwide education—an outcome that would run afoul of the anticommandeering doctrine.

Likewise, neither Section 1623 nor Section 1621 can support the United States' express-preemption challenge to MHEC's Student Residency Policy. This general regulation merely reflects longstanding law regarding immigration status and in-state tuition.

### I. Section 1623(a) has no preemptive effect because it purports to regulate states, not private actors.

Section 1623 is not a valid preemption statute because it does not regulate the conduct of private actors and instead purports to directly regulate states. *See Murphy*, 584 U.S. at 479–80 (holding that a provision of federal law that prohibited states from "authoriz[ing]" sports gambling

violated the anticommandeering doctrine "because there is no way in which this provision can be understood as a regulation of private actors"); *see also New York v. United States*, 505 U.S. 144, 166, 175 (1992) (holding that a federal law that required a state to either "take title" to radioactive nuclear waste or "regulat[e] according to the instructions of Congress" violated the Constitution).

"Preemption is based on the Supremacy Clause," which "is not an independent grant of legislative power to Congress," but "simply provides a rule of decision." *Murphy*, 584 U.S. at 477 (internal quotation marks omitted). Thus, "in order for [a federal statutory] provision to preempt state law, it must satisfy two requirements. First, it must represent the exercise of a power conferred on Congress by the Constitution . . . . Second, since the Constitution 'confers upon Congress the power to regulate individuals, not States,'" the federal statutory "provision at issue must be best read as one that regulates private actors." *Id.* (quoting *New York*, 505 U.S. at 166). A valid preemption statute "imposes restrictions or confers rights on private actors." *See id.* at 470.

The Tenth Amendment to the U.S. Constitution preserves states' sovereign authority to direct their state legislatures to enact laws. *See* U.S. Const. amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people"). The anticommandeering doctrine thus reflects this constitutional limit on federal preemption. *Murphy*, 584 U.S. at 471.

Section 1623(a) impermissibly regulates states and thus is invalid as a preemption provision. It purports to prescribe who shall or shall not be "eligible" for postsecondary education benefits, but "eligibility" for postsecondary education benefits is established by state institutions. *See supra* (describing Maryland laws and regulations, as well as USM Board of Regents and MHEC policies, establishing residency, tuition, and eligibility requirements). Courts have

interpreted this statutory provision to be directed at the states. *See, e.g.*, *Martinez*, 241 P.3d at 863 ("Section 1623(a) prohibits *a state* from making unlawful aliens eligible 'on the basis of residence within a State' for a postsecondary education benefit.") (emphasis added). It is not, by contrast, directed at private conduct; it "does not confer any federal rights on private actors," *Murphy*, 584 U.S. at 480, such as private universities or nonresident U.S. citizens, "[n]or does it impose any federal restrictions on private actors," *id.*, such as undocumented immigrants. Thus, "there is simply no way to understand the provision prohibiting state [eligibility] as anything other than a direct command to the States." *Id.*[9]

The Supreme Court has recognized "that even where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power directly to compel the States to require or prohibit those acts." *Id.* at 472 (quoting *New York*, 505 U.S. at 166). Even assuming the federal government has such authority in this case, it nonetheless "lacks the power directly to compel" a state to prohibit undocumented immigrants' eligibility for postsecondary education benefits. *Id.* (citation omitted). Because Section 1623(a) cannot be understood to

[9] Two courts that recently addressed anticommandeering challenges to Section 1623(a) found it to be a valid preemption statute. *See United States v. Texas*, 181 F.4th 548, 559–60 (5th Cir. 2026); *United States v. Illinois*, No. 25-CV-1691-DWD, 2026 WL 2137256, at *7–8 (S.D. Ill. July 24, 2026). But this Court need not adopt their reasoning. First, given the posture of the Fifth Circuit case, the court may not have considered all relevant arguments. *See Texas*, 181 F.4th at 567–68 (Ramirez, J., dissenting) (explaining that the "district court did not invite any substantive briefing—adversarial or otherwise—before entering the consent judgment," and that its futility analysis "overlooked issues relating to both its subject matter jurisdiction and . . . meritorious defenses to the United States' express preemption claim").

Moreover, other than conclusory statements that Section 1623(a) concerns "eligibility," neither court explained the courts' theories of how Section 1623(a) could be understood to regulate private actors rather than the states that enact the laws establishing individuals' eligibility for such benefits. *See Texas*, 181 F.4th at 559–60 (stating that Section 1623(a) "declares a limitation on illegal eligibility itself and does not regulate states directly") (internal quotation marks and alterations omitted); *id.* at 560 ("Section 1623(a)'s self-executing provision 'merely targets offending *laws*[.]'"); *Illinois*, 2026 WL 2137256, at *7 (Section 1623 "regulates the eligibility of *individuals*, specifically individuals who are not lawfully present").

regulate the conduct of private actors, applying this statutory provision to preempt the Maryland Dream Act would be "as if federal officers were installed in" the Maryland General Assembly and "were armed with the authority to stop legislators from voting on [this] [purportedly] offending proposal[]" in the first place. *Id.* at 474.

In sum, Section 1623(a) is "best read" to operate as "a direct command to the States." *Id.* at 477, 480. Section 1623(a) is therefore not a valid preemption statute.

## II. Section 1623(a) does not expressly preempt the Maryland Dream Act.[10]

Even if Section 1623 could be read as a valid preemption statute, it would not in this instance preempt the Maryland Dream Act. Rather than imposing a blanket prohibition on undocumented-immigrant eligibility, Section 1623 provides that an undocumented immigrant "shall not be eligible" for postsecondary education benefits "on the basis of residence within a State" *unless* "a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a); *see also Martinez*, 241 P.3d at 864 ("[S]ection 1623 does not impose an absolute ban" on postsecondary education benefits for undocumented students.). Thus, "[w]hile it is certainly true that" Section 1623(a)'s purported "preemption provision limits the options available to the states, it would be wrong to conclude that" Section 1623(a) "envisions no role for states" in extending postsecondary education benefits to certain undocumented immigrants. *See Air Evac EMS, Inc.*, 910 F.3d at 770.

---

[10] Count One challenges the Maryland Dream Act. *See* Compl. ¶¶ 64–72. Count Two challenges various Maryland laws and regulations to the extent they incorporate the Maryland Dream Act's in-state tuition eligibility criteria for financial-aid eligibility. *See* Compl. ¶¶ 75–76. Because the federal government's claims against these additional provisions rest on the constitutionality of the Maryland Dream Act, this section focuses on the Dream Act and its grant of in-state tuition status.

To determine whether the Maryland Dream Act is expressly preempted by Section 1623(a), the Court must answer two questions. First, whether an undocumented individual is eligible for a postsecondary education benefit "on the basis of residence." Second, if so, whether a U.S. citizen or national is eligible for this benefit without regard to whether they are a resident. Assuming Section 1623 is a valid preemption statute (it is not), both parts must be satisfied for Section 1623(a) to preempt the Maryland Dream Act. If the answer to either question is "no," then Section 1623(a) does not preempt the Act. And here, because the answer to each question is "no," Section 1623(a) does not expressly preempt the Maryland Dream Act—for two independent reasons.

### A. The Maryland Dream Act does not provide postsecondary education benefits "on the basis of residence."

Assuming a nonresident tuition exemption is a "postsecondary education benefit" within the meaning of 8 U.S.C. § 1623(a), the Maryland Dream Act does not provide this benefit to undocumented individuals "on the basis of residence" in Maryland. The federal government asserts that the Maryland Dream Act makes individuals eligible for in-state tuition "based on residency within Maryland" due to certain of the Act's requirements. *See* Compl. ¶¶ 69, 70. The first category of purported "residency based" requirements concerns high school attendance and graduation. *See* Educ. § 15-106.8(b)(1) ("[a]ttended a public or nonpublic secondary school in the State"); *id.* § 15-106.8(b)(2) ("[g]raduated from a public or nonpublic secondary school in the State or received the equivalent of a high school diploma in the State"). The second category of purported "residency based" requirements concerns income tax returns, including the requirement that in order to retain in-state tuition status "an individual shall use an address in the State on the Maryland income tax return of the individual or the individual's parent or legal guardian annually until the individual is awarded a degree from the public institution of higher education." *See id. id.* § 15-106.8(e)(1)(2); *see also id.* § 15-106.8(b)(4) ("[p]rovides . . . documentation that the

individual or the individual's parent or legal guardian has filed a Maryland income tax return annually for the 2-year period before the academic year in which the tuition rate exemption would apply"). The federal government is incorrect that these eligibility requirements are based on residence. Indeed, nonresidents can satisfy them.

The federal government's claim turns on the meaning of the statutory phrase "on the basis of residence within a State." Courts have interpreted the phrase "on the basis of" to mean "but-for" causation. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 335 (2020) (Gorsuch, J.) (noting that the language "on the basis of" is "strongly suggestive of a but-for causation standard"); *Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 235–36 (4th Cir. 2016) (finding "no 'meaningful textual difference' between this language ['on the basis of'] and the terms 'because of,' 'by reason of,' or "based on"—terms that the Supreme Court has explained connote 'but-for' causation") (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351–52 (2013)). But-for causation, in turn, means that "an action is not regarded as a cause of an event if the particular event would have occurred without it." *Nassar*, 570 U.S. at 347 (internal quotation marks and citation omitted). As to the meaning of "residence" in Section 1623(a), Congress defined that term to "mean[ ] the place of general abode; the place of general abode of a person means his *principal, actual dwelling place* in fact, without regard to intent." 8 U.S.C. § 1101(a)(33) (emphasis added), 1641(a).[11] Thus, "[r]ead all together, a state statute would be preempted by [this] portion of § 1623 if it provides postsecondary education benefits to unlawful

[11] Section 1641 defines terms used in Title 8, Chapter 14 of the U.S. Code, which includes Section 1623. Section 1641 states that, unless provided otherwise, "the terms used in this chapter have the same meaning given such terms in section 101(a) of the Immigration and Nationality Act [8 U.S.C. § 1101(a)]." 8 U.S.C. § 1641(a).

noncitizens because their principal, actual dwelling place is within the State." *Walz*, 825 F. Supp. 3d at 909.

Contrary to Section 1623(a)'s requirement of "but-for" causation, the Maryland Dream Act does not make an individual eligible for any postsecondary education benefit because of their principal, actual dwelling place in Maryland. Eligibility is instead based on residence-neutral factors. In other words, eligibility for in-state tuition status under the Act is not based on residence because an individual can be eligible "without it." *See Nassar*, 570 U.S. at 347.

**1. The Maryland high school requirement is not based on residence because nonresidents can attend and graduate from Maryland high schools.**

The Maryland Dream Act's high school attendance and graduation requirements are not requirements "on the basis of residence" because nonresidents can attend and graduate from Maryland high schools. For example, a nonresident can attend a private school in Maryland. In addition, a student in another state or Washington, D.C. may attend a Maryland public high school.[12]

Courts that have evaluated whether Section 1623(a) expressly preempts state laws that make undocumented immigrants eligible for in-state tuition have distinguished between laws that base eligibility on residence (focusing on explicit requirements that a student be a resident of the State) and laws like the Maryland Dream Act that base eligibility on residence-neutral criteria (looking to requirements of high school attendance and graduation). *Compare United States v.*

---

[12] *See* Educ. § 7-101(b)(2)(i)(1) ("On request and in accordance with a county board's policies concerning residency, a county superintendent . . . [m]ay allow a child to attend school in the county even if the child is not domiciled in that county with the child's parent or guardian[.]"); *see, e.g.*, Montgomery County Public Schools (MCPS), *Regulation JEA-RE, Tuition-Based Enrollment*, https://ww2.montgomeryschoolsmd.org/departments/policy/pdf/jeare.pdf [https://perma.cc/8ETG-STSU] (establishing procedures for nonresident students in MCPS on a tuition-pay basis and identifying procedures for waiver of tuition requirements).

*Texas*, 181 F.4th 548, 555–56 (5th Cir. 2026) (affirming order denying intervention to consent judgment that invalidated Texas laws because "[e]ach of the three pathways" for in-state tuition eligibility is "tethered to establishing a 'domicile' or 'residence' within Texas") (citation omitted), *United States v. Illinois*, No. 25-CV-1691-DWD, 2026 WL 2137256, at *9 (S.D. Ill. July 24, 2026) (concluding Illinois laws are preempted for "[w]hen a state law ties postsecondary education benefits to high-school attendance or graduation in the state *together with residence-related requirements* (such as living with a parent or guardian in the state or residing in the state while attending high school), the benefit is still granted 'on the basis of residence' for purposes of § 1623(a)") (emphasis added), *with Walz*, 825 F. Supp. 3d at 908 (upholding Minnesota law that "determine[] eligibility based on *residency-neutral* criteria, specifically, where a student attended and graduated high school") (emphasis added), *Martinez*, 50 Cal. 4th at 1290 (upholding California law as its "exemption cannot be deemed to be based on residence for the simple reason that many *nonresidents* may qualify for it. . . . Attending high school in California for at least three years and meeting the other requirements are not the functional equivalent of residing in California").[13] Taken together, these decisions on Section 1623(a) and in-state tuition laws support the conclusion that the Maryland Dream Act is not expressly preempted.

In sum, because the Maryland Dream Act's high school requirement can be satisfied by nonresidents, that eligibility requirement is not "on the basis of residence."

---

[13] Indeed, the court in *United States v. Nebraska*, which the federal government cites favorably in its complaint, *see* Compl. ¶ 6, recognized this distinction between in-state tuition laws that courts have found not to be preempted and those laws that courts have struck down. *Compare United States v. Nebraska*, 2026 WL 1584862, at *26 (D. Neb. June 3, 2026) ("Eligibility for in-state tuition under [Nebraska law] is plainly based on 'residence' . . . ."), *with id.* at *26 n.2 ("In contrast, the Minnesota statute at issue in *United States v. Walz* . . . did not turn on residence at all, but on where the student attended and graduated from high school.").

**2. The income tax return requirement is also not based on residence because nonresidents can file income tax returns for work performed in the State.**

Similarly, the Maryland Dream Act's income-tax return requirement is not "on the basis of residence" because nonresidents who earn income in Maryland can file income tax returns in Maryland regardless of where they reside. *See* Md. Code Ann., Tax-Gen. § 10-806(a) (subject to an exception for nonresident dependents, "each nonresident who has Maryland taxable income and is required to file a federal income tax return shall file an income tax return").

The difference between the Maryland resident income-tax return requirement and the Maryland Dream Act income tax return requirement confirms that the Maryland Dream Act's requirement is not "on the basis of residence." Under USM's Student Classification Policy, to qualify for in-state tuition via the standard route—based on Maryland residence and separate from the Maryland Dream Act—the student or their parent or guardian (if the student is financially dependent) must have "paid Maryland income tax on all taxable income, including all taxable income earned outside Maryland" and if the student "has earned any taxable income during the [relevant period], the student must have filed a Maryland *Resident* Tax Return."[14] *See* USM Student Classification Policy at 3 (emphasis added); *see* Comptroller of Md., Maryland Form 502 – Resident Income Tax Form,

[14] There are two exceptions that may require the student to provide additional information to demonstrate residence. If a student is financially dependent on a person who is a nonresident, the student "may submit additional evidence . . . in order to prove, by clear and convincing evidence, that the student had the continuous intent to reside in Maryland indefinitely and for a primary purpose other than that of attending an educational institution in Maryland." USM Student Classification Policy at 3. If a student is not financially dependent and is not required to file a Maryland income tax return, the student "may be asked by the institution reviewing the initial application, petition, or appeal, for additional information (e.g., a W-2 or 1099 form or other relevant documents)." *Id.*

https://www.marylandcomptroller.gov/content/dam/mdcomp/tax/forms/2025/502.pdf [https://perma.cc/MN2L-BYD5].

The Maryland Dream Act, by contrast, does not require that a student or their parent or guardian submit a Maryland *Resident* Tax return. It requires only that the individual or the individual's parent or guardian have filed a Maryland income tax return for the 2-year period before the academic year for which the exemption is sought, Educ. § 15-106.8(b)(4), and that the filer "use an address in the State on the Maryland income tax return of the individual or the individual's parent or legal guardian annually until the individual is awarded a degree from the public institution of higher education," *id.* § 15-106.8(e)(2).

A nonresident can file a Maryland *Nonresident* Income Tax return and list an address in the State. *See* Comptroller of Md., Maryland Form 505 – Nonresident Income Tax Form, https://www.marylandcomptroller.gov/content/dam/mdcomp/tax/forms/2025/505.pdf [https://perma.cc/65PE-N7YZ]. For the box titled "Current Mailing Address," a filer can use a PO Box. *See id.* For the boxes titled "Maryland County" and "City, Town or Taxing Area," a filer should include the "[n]ame of county and incorporated city, town, or special taxing area" in which the filer was "employed on the last day of the taxable period" if the filer "earned wages in Maryland." *See id.* Thus, an individual who is not a resident can file an income tax return and "use an address in the State on the Maryland income tax return."

Because the Maryland Dream Act's income tax return requirement can be satisfied by nonresidents, that eligibility requirement is also not "on the basis of residence."

### B. The Maryland Dream Act makes U.S. citizens eligible for postsecondary education benefits "without regard" to their residence in Maryland.

Even assuming the Maryland Dream Act's eligibility criteria is based on residence (which it is not), Section 1623(a) contains a savings clause—a state may provide postsecondary education

benefits to an undocumented individual based on their residence in the state *if* a U.S. citizen or national is eligible for a similar benefit "without regard" to their residence. *See* 8 U.S.C. § 1623(a). The United States wrongly assumes that because the Maryland Dream Act makes certain qualified students, including undocumented immigrants, eligible for in-state tuition status, it must do so on the basis of residence, and it must therefore also deny this benefit to nonresident U.S. citizens. *See* Compl. ¶ 29 ("Maryland law rewards illegal aliens present in the State with eligibility for in-state tuition based on residency within Maryland, while explicitly denying eligibility for resident tuition to U.S. citizens who are not Maryland residents.") (citing Educ. § 15-106.8). This is incorrect. Qualified nonresident U.S. citizens and nationals are eligible for in-state tuition status under the Maryland Dream Act. Moreover, nonresident U.S. citizens and nationals are also eligible for in-state tuition status under other Maryland laws and USM and MHEC policies.

**1. U.S. citizens who are not Maryland residents are eligible for in-state tuition under the Maryland Dream Act.**

By its plain terms, the Maryland Dream Act does not limit eligibility for the nonresident tuition exemption to undocumented immigrants. To be eligible for the nonresident exemption and in-state tuition status under the Maryland Dream Act a person must qualify as an "individual" under the Act. The term "individual" is defined such that it "(1) includes an undocumented immigrant individual; and (2) does not include a nonimmigrant alien within the meaning of 8 U.S.C. § 1101(a)(15)." Educ. § 15-106.8(a). The word "includes" and "including" mean, unless the context requires otherwise, by way of illustration and not by way of limitation. Md. Code Ann., Gen. Provis. § 1-110. In other words, an "undocumented immigrant individual" is one type

of individual who may be eligible, but not the only type.[15] Thus, by the plain terms of the statute, nonresident U.S. citizens are eligible for in-state tuition status under the Maryland Dream Act.

Moreover, there is no language in the text of the Dream Act that would preclude eligibility by U.S. citizens or nationals. Regarding high school attendance and graduation, there are at least three categories of U.S. citizen nonresidents who may satisfy those requirements: (1) students from other states or Washington, D.C. who may attend Maryland public high schools; (2) nonresidents who may attend Maryland private schools; and (3) a student who attended and graduated from a Maryland high school may move out of Maryland. *See Walz*, 825 F. Supp. 3d at 912 ("Under Minnesota's statutory scheme, nonresidents can—and do—qualify for resident tuition: by living in a neighboring state and attending Minnesota high schools, attending a Minnesota boarding school, or attending and graduating from a Minnesota high school before moving out of state. So even if the Resident Tuition Statute contained a de facto residency requirement, 'a citizen or national' is eligible for Resident Tuition without regard to that individual's residence."). As for the income-tax return requirements, as discussed above, nonresident U.S. citizens can file Maryland income tax returns and are able to include a Maryland address on the form. The federal government does not challenge any other eligibility requirement of the Dream Act. Nor could it. A nonresident U.S. citizen or national can meet the Maryland Dream Act's eligibility requirements.

---

[15] Indeed, the only other statutory requirement that refers to immigration status confirms that the Maryland Dream Act can apply to individuals who are not undocumented. Section (b)(5) of the Act provides that "[i]n the case of an individual who is not a permanent resident," a student seeking in-state tuition under the Maryland Dream Act must "provide[] to the public institution of higher education an affidavit stating that the individual will file an application to become a permanent resident within 30 days after the individual becomes eligible to do so." Educ. § 15-106.8(b)(5). The first clause would be unnecessary if the Act applied only to undocumented immigrants.

**2. Nonresident U.S. citizens have other ways to be eligible for in-state tuition.**

Regarding the type of benefit a state must extend to a nonresident U.S. citizen when it makes an undocumented immigrant eligible for any residence-based postsecondary education benefit, Section 1623(a) requires only that the state provide "such a benefit (in no less an amount, duration, and scope)" as the benefit available to the undocumented student, without regard to residence. *See* 8 U.S.C. § 1623(a). Here, the postsecondary education benefit at issue is in-state tuition. Despite the federal government's claim that Maryland law denies eligibility for in-state tuition to nonresident U.S. citizens, Compl. ¶ 29, in addition to the Maryland Dream Act, Maryland law provides for certain U.S. citizens and nationals who are not residents of Maryland to qualify for in-state and in-county tuition at Maryland public institutions of higher education. *See, e.g.*, Educ. § 16-310(a)(3)(i) ("A *resident of the state of West Virginia* who attends Garrett College under a negotiated reciprocity agreement between the states of Maryland and West Virginia is an in-county resident for tuition purposes") (emphasis added); *id.* § 16-310(a)(4)(i) ("Any student attending a community college in this State who is *not a resident of this State* and is enrolled in an education program leading to licensure in nursing shall be included as an in-county resident for tuition purposes . . . .") (emphasis added); *id.* § 16-310(a)(7)(i)-(ii) ("Each board of community college trustees may waive the out-of-state fee . . . for a student who resides in the State but *does not meet the in-State residency requirement* for tuition purposes and has moved to the State as an employee or a family member of an employee as part of" the Base Realignment and Closure process as announced by the U.S. Department of Defense) (emphasis added); *id.* § 11-105(n)(2)(ii) (authorizing MHEC to participate in the Southern Regional Education Board Interstate Agreement, also known as the Academic Common Market, "to provide an opportunity for *qualified nonresident students* to enroll in selected programs and curricula on a *resident tuition* and fee charge basis") (emphasis added).

These exemptions are reflected in USM and MHEC policies. USM's Student Classification Policy provides that "some students who are not permanent Maryland residents and do not meet the criteria for in-state residency . . . may qualify temporarily for in-state status if they qualify for an exemption under . . . th[e] Policy." USM Student Classification Policy at 1; *see also id.* at 6–8 (describing criteria for exemptions). The residency exemption applies to "[i]ndividuals, including undocumented immigrants, who do not meet the definition of nonimmigrant alien within the meaning of 8 U.S.C. § 1101(a)(15) and who meet all the criteria in" the Maryland Dream Act. *Id.* at 8. But it also applies to other students who are nonresidents, including, for example, members of the U.S. Foreign Service "who are on active duty for a period of more than 30 days and whose domicile or permanent duty station is in Maryland," and members of the U.S. Intelligence Community "who have served . . . for a period of more than 30 days and whose domicile or permanent duty station is in Maryland," and their spouses and financial dependents, for the duration of their continuous enrollment at the institution "notwithstanding a subsequent change in the permanent duty station of the member to a location outside Maryland." *Id.*

MHEC's Student Residency Policy similarly requires that certain out-of-state students "be considered Maryland residents." COMAR 13B.07.02.03(F). These include military personnel "stationed in Maryland and on active duty who did not have domicile in Maryland at the time of entrance into the armed forces, and their dependents," *id.* 13B.07.02.03(F)(2), students "from outside the State who enroll[] as part of a reciprocity agreement negotiated between Maryland and another state," *id.* 13B.07.02.03(F)(4), and students "from outside the State" who are formally admitted and enrolled in a nursing licensing program and, among other requirements, agree to work full-time in Maryland for at least two years in a hospital or related institution, *id.* 13B.07.02.03(G).

Maryland residency is one way to qualify for in-state tuition status. But nonresidents can also obtain in-state tuition status. Thus, in-state tuition status is not the same as Maryland residency but rather reflects policy decisions about which students—resident or nonresident, U.S. citizen or noncitizen—are eligible for "such a" discounted tuition rate.

**3. Interpreting Section 1623(a) to require that a state provide postsecondary education benefits to *all* U.S. citizens raises serious constitutional concerns.**

Given nonresident eligibility for in-state tuition status, the only issue that remains is whether Section 1623 categorically excludes all undocumented individuals from eligibility, a reading inconsistent with both the statutory text and constitutional limits on preemption. Contrary to the United States' assertion that Section 1623(a) bars states from granting any residence-based postsecondary education benefit to undocumented immigrants unless the state extends this benefit to *all* U.S. citizens, *see* Compl. ¶ 25, Section 1623(a) does not compel this far-reaching outcome. *Cf. Martinez*, 50 Cal. 4th at 1300 ("It cannot be the case that states may never give a benefit to unlawful aliens without giving the same benefit to all American citizens."). Under this interpretation, a state cannot make an undocumented immigrant eligible for a postsecondary education benefit that is unavailable to *any* U.S. citizen—resident or nonresident. In other words, a state could not maintain the distinction between in-state and out-of-state tuition rates if the state seeks to provide in-state tuition status to any undocumented immigrant on the basis of residence. There are several reasons to reject the federal government's sweeping interpretation of Section 1623(a).

The first reason is based on statutory interpretation. Section 1623(a) provides that an undocumented immigrant shall not be eligible for any postsecondary education benefit based on residence "unless *a* citizen or national of the United States" is eligible for this benefit regardless of their residence. 8 U.S.C. § 1623(a). Here, Congress used the word "a" to describe how many

U.S. citizens or nationals must be eligible for such benefit, not "all." *Id.* Indeed, Congress knew how to use the word "all" because it did so elsewhere in the statute. *See, e.g.*, 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal *only if* . . the alien has exhausted *all* administrative remedies available to the alien as of right . . . .") (emphasis added). Thus, the use of the indefinite article "a" in this context means "one or more." *See Niz-Chavez v. Garland*, 593 U.S. 155, 164 (2021) ("The Dictionary Act [1 U.S.C. § 1] does not transform every use of the singular 'a' into the plural 'several.' Instead, it tells us only that a statute using the singular 'a' can apply to multiple persons, parties, or things."). This Court should therefore not disregard this "clear language." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 794 (2014) ("This Court has no roving license . . . to disregard clear language simply on the view that . . . Congress 'must have intended' something broader.") (citation omitted).

Relatedly, the federal government's interpretation fails for an additional reason: the necessary precondition for nonresident U.S. citizen eligibility—making an undocumented immigrant eligible—is limited to "eligibility . . . on the basis of residence within a State."[16] This language cabins sweeping interpretations.

But even assuming the indefinite article "a" can also be read to mean "all," or "on the basis of" could be read out of the statute, this Court should adopt the narrower interpretation of Section 1623(a) that preserves the state law. *See Altria Grp.*, 555 U.S. at 77 ("[W]hen the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'") (quoting *Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 449

[16] Congress could have "prohibit[ed] states entirely from making unlawful aliens eligible for in-state tuition," *Martinez*, 241 P.3d at 864, but it only prohibited eligibility "on the basis of residence within a State," *id.* (quoting 8 U.S.C. § 1623(a)). Such a hypothetical law would likely raise constitutional issues, including under the anticommandeering doctrine, but the point stands that Congress could have written a different law if it wanted to and it did not.

(2005)); *Am. Petroleum Inst. v. Cooper*, 718 F.3d 347, 354 (4th Cir. 2013) ("[W]hen determining the interplay of the federal and state statutes at issue, we are obliged to attempt to harmonize those statutes if reasonably possible."). This narrow construction is especially warranted in an area of traditional state police powers. *See CMH Mfg., Inc. v. Catawba Cty.*, 994 F. Supp. 697, 704 (W.D.N.C. 1998) ("[B]ecause there is a strong presumption against preemption of state police power, express preemption provisions are to be narrowly construed.") (citing *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 517–18 (1992)). And here, Section 1623(a) purports to regulate in such an area—higher education. *Barbier v. Connolly*, 113 U.S. 27, 31 (1884) (describing the "power of the state, sometimes termed its police power" to include "prescrib[ing] regulations to promote the . . . education . . .of the people"); *Vlandis v. Kline*, 412 U.S. 441, 452–53 (1973) ("[A] State has a legitimate interest in protecting and preserving the quality of its colleges and universities and the right of its own bona fide residents to attend such institutions on a preferential tuition basis."); *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 265 (4th Cir. 2005) ("Higher education is an area of quintessential state concern and a traditional state governmental function.").

The second reason is based on the permissible scope of a preemption statute. Eliminating the in-state and out-of-state distinction would result in an outcome the federal statute does not contemplate. In this scenario, there would be no "benefit" left for which to make U.S. citizens eligible, let alone undocumented immigrants, because any "discount" between the in-state and out-of-state tuition rate that a prospective student could receive due to in-state status would no longer exist. *See Quarles v. United States*, 587 U.S. 645, 654 (2019) (rejecting interpretation that would "defy common sense"). Further "defy[ing] common sense" is that this interpretation would result in a state privileging nonresidents over its own residents, by making these nonresidents eligible for in-state tuition twice over—in their home state and in Maryland. This Court should therefore

assume Congress would have spoken clearly if it intended to overhaul higher education systems and upend a longstanding prerogative of states to set tuition rates. *CSX Transp. Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) ("[P]re-emption will not lie unless it is 'the clear and manifest purpose of Congress.'") (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

A third reason is based on anticommandeering concerns. As explained above, the federal government's interpretation of Section 1623(a)'s preemption provision raises anticommandeering concerns. Even assuming that Section 1623(a) is a valid preemption provision, adopting a broad interpretation of its preemptive scope to mandate that a state subsidize the cost of public higher education for all nonresidents to provide postsecondary education benefits to undocumented immigrants would still run afoul of the anticommandeering doctrine. *See Murphy*, 584 U.S. at 474 ("[T]he anticommandeering principle prevents Congress from shifting the costs of regulation to the States. If Congress enacts a law and requires enforcement by the Executive Branch, it must appropriate the funds needed to administer the program.").

***

For each of these independent reasons, Section 1623(a) does not expressly preempt the Maryland Dream Act, and this Court should dismiss Counts One and Two.

## III. Federal law does not expressly preempt MHEC's Student Residency Policy.

The federal government contends that MHEC's Student Residency Policy, COMAR 13B.07.02.03, is expressly preempted by Section 1623(a) and Section 1621(d). Repackaging its objections to the Maryland Dream Act, it asserts that Section 1623(a) expressly preempts the regulation because it purportedly "extends eligibility for postsecondary financial assistance to illegal aliens" in violation of that federal statute. *See* Compl. ¶ 80. It further asserts that Section 1621(d) expressly preempts the regulation because it purportedly makes undocumented

immigrants eligible for "State" or "local public benefits" without "affirmatively provid[ing]" for such eligibility through "the enactment of a State law." *See* Compl. ¶ 83 (quoting 8 U.S.C. § 1621(d)); *see also* Compl. at 23 (arguing that the State extends public benefits "through rule rather than by State law enactment").

As an initial matter, Section 1623 and Section 1621 do not expressly preempt MHEC's Student Residency Policy because both are invalid preemption statutes. As discussed above, Section 1623(a) is not a valid preemption provision because it does not regulate private actors and instead purports to directly regulate states. *See Murphy*, 584 U.S. at 479–80 (invalidating federal law for violating the anticommandeering doctrine as "there is no way in which this provision can be understood as a regulation of private actors"). Section 1621(d) likewise violates the anticommandeering doctrine because it not only directs *what* states must do ("affirmatively provide") but also dictates *how* they must do it (by "enactment of a State law"). Congress' "direct command to the States," *id.* at 480, could not be more explicit. Section 1621(d), like Section 1623(a), represents a clearly impermissible effort by Congress to commandeer state legislative processes. *See id.* at 472.

In any event, both preemption claims additionally fail because the federal statutes do not apply to MHEC's Student Residency Policy. The federal provisions address *eligibility* for postsecondary education benefits. *See* 8 U.S.C. § 1621(d) (a state may provide that an undocumented immigrant "is eligible" for public benefits only through the enactment of a state law, which affirmatively provides for such eligibility); *id.* § 1623(a) (an undocumented immigrant shall not be "eligible" on the basis of residence for any postsecondary education benefit unless a U.S. citizen or national is eligible for such benefit regardless of their residence). The challenged provision of the MHEC regulation, however, does not confer eligibility.

Stating only that an "individual's immigration status *may not* preclude award of Maryland residency . . . if the individual has the legal capacity to establish domicile in Maryland," COMAR 13B.07.02.03(A)(3) (emphasis added), that provision merely reflects the truism that a noncitizen *may* be able to establish domicile under Maryland law. This language reflects U.S. Supreme Court precedent that a higher education institution cannot categorically bar certain noncitizens from establishing domicile for purposes of qualifying for in-state tuition. *See Toll v. Moreno*, 458 U.S. 1, 3, 9 (1982) (finding unlawful university policy insofar as it categorically denied in-state tuition to "domiciled nonimmigrant aliens who hold G–4 visas," i.e., employees of international organizations and their families); *id.* at 6–7 ("[N]othing in the general Maryland law of domicile renders G–4 visa holders, or their dependents, incapable of becoming domiciled in this State.") (quoting *Toll v. Moreno*, 284 Md. 425, 444 (Md. 1979)); *id.* at 17 ("In such circumstances [domiciled G-F aliens], we cannot conclude that Congress ever contemplated that a State, in the operation of a university, might impose discriminatory tuition charges and fees *solely on account of the federal immigration classification*.") (emphasis added). Thus, MHEC's regulation reflects the background legal principle that the State *may not* categorically preclude certain noncitizens from award of in-state tuition status because of their immigration status, as they may be able to establish domicile under Maryland law and therefore, consistent with Maryland and federal law, may be eligible for certain public benefits, including in-state tuition.

Moreover, the challenged provision of MHEC's regulation is located in MHEC's Student Residency Policy, a general residency and tuition policy, that by its own terms does not make a noncitizen eligible for in-state tuition status. This policy explains how community college boards of trustees classify students by domicile, sets tuition tiers, and identifies which categories of individuals may or shall qualify as residents for calculating tuition and State aid. *See* COMAR

13B.07.02.03. As relevant here, the challenged provision of the regulation does not confer eligibility on any individual. Importantly, the provision's use of "may not," rather than a mandatory phrase such as "shall not," underscores that the provision does not itself confer in-state tuition status. Rather, it leaves room for additional determinations before eligibility for such status is established. In short, this provision does not grant eligibility; it only prevents an automatic bar.

In *Young Conservatives of Texas Foundation v. Smatresk*, the Fifth Circuit considered whether Section 1623(a) expressly preempted a similar general residency and tuition law. 73 F.4th 304 (5th Cir. 2023). The state residency statute at issue there charged students who satisfied residency requirements a lower tuition rate than it charged nonresidents. *Id.* at 307–08. That general residency statute did not address undocumented immigrants; a different statute provided that an undocumented immigrant who satisfied the residency requirements qualified for the lower tuition rate. *Id.* at 308. In upholding the general residency statute against the challenge that it was preempted by Section 1623(a), the Court explained, "[Section 1623's] sole focus is on improper benefits for illegal aliens. Section 54.051(1)(D) [the general residency statute] . . . does not grant those benefits. It does nothing more than set the tuition price for nonresident students, citizens or not. It takes no stance on whether illegal aliens are eligible for a cheaper price. Section 1623(a) has nothing to say about a rule like that." *Id.* at 313. Neither does Section 1621(d). As a result, MHEC's Student Residency Policy falls outside any purported preemptive scope of Sections 1623(a) and Section 1621(d).

For all these reasons, the United States' express preemption claims fail as a matter of law, and this Court should dismiss Counts Three and Four.

**CONCLUSION**

For the foregoing reasons, the United States' claims should be dismissed with prejudice.

Dated: August 27, 2026

Respectfully submitted,

**ANTHONY G. BROWN**
ATTORNEY GENERAL OF MARYLAND

/s/ Yasmin Dagne

Yasmin Dagne (D. Md. Bar No. 32016)
Adam Kirschner (D. Md. Bar No. 31767)
Assistant Attorneys General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
ydagne@oag.maryland.gov
410-223-1580

*Counsel for Defendants*