**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF MARYLAND,<br>100 State Circle, Annapolis, MD 21401<br><br>MARYLAND HIGHER EDUCATION COMMISSION (MHEC),<br>217 E. Redwood Street, Suite 2100<br>Baltimore, MD 21202<br><br>UNIVERSITY SYSTEM OF MARYLAND BOARD OF REGENTS,<br>3300 Metzerott Road, Adelphi, MD 20783<br><br>Defendants. | Civil No. 1:26-cv-2796-SAG |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 3

I. The Supremacy Clause & The Immigration Power ..... 3

II. 8 U.S.C. §§ 1621 and 1623 ..... 5

III. The Challenged Maryland Statutes and Regulations ..... 6

IV. Procedural History ..... 9

LEGAL STANDARDS ..... 9

ARGUMENT ..... 10

I. The Challenged Laws are Preempted by Section 1623 ..... 10

A. Section 1623 is a Valid Preemption Statute ..... 10

1. Section 1623 Exercises Congress's Power to Regulate Immigration ..... 10

2. Section 1623 Regulates Private Parties ..... 11

B. The Challenged Laws are Preempted ..... 16

1. The Challenged Laws Create Eligibility on the Basis of Residence in the State ..... 16

a. Maryland Dream Act, § 15-106.8 ..... 17

b. Statutes Incorporating § 15-106.8 by Reference ..... 20

c. Regulation 13B.07.02.03 ..... 20

2. The Challenged Laws Do Not Make U.S. Citizens Eligible for the Same Benefit Without Regard to Residence ..... 21

II. Section 1621(d) is a Valid Preemption Provision that Preempts the Challenged Regulation ..... 24

III. The United States is Entitled to an Injunction ..... 25

CONCLUSION ..... 29

## TABLE OF AUTHORITIES

**Cases**

*ACA Fin. Guar. Corp. v. City of Buena Vista*,
917 F.3d 206 (4th Cir. 2019) .......... 9

*Albernaz v. United States*,
450 U.S. 333 (1981) .......... 16

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
559 F.3d 1046 (9th Cir. 2009) .......... 26

*Arizona v. United States*,
567 U.S. 387 (2012) .......... passim

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 9

*Blackie's House of Beef, Inc. v. Castillo*,
659 F.2d. 1211 (D.C. Cir. 1981) .......... 28

*Cisneros v. Blanche*,
182 F.4th 363 (4th Cir. 2026) .......... 7

*City of New York. v. United States*,
179 F.3d 29 (2d. Cir. 1999) .......... 13, 27

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*,
485 U.S. 568 (1988) .......... 16

*Equal Access Educ. v. Merten*,
305 F. Supp. 2d 585 (E.D.Va. 2004) .......... 14

*Fiallo v. Bell*,
430 U.S. 787 (1977) .......... 4

*Haaland v Brackeen,*
599 U.S. 255 (2023) .......... 11, 15

*Henry v. Purnell*,
652 F.3d 524 (4th Cir. 2011) .......... 10

*Husted v. A. Philip Randolph Inst.*,
584 U.S. 756 (2018) .......... 16

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) .......... 25

*Legend Night Club v. Miller*,
637 F.3d 291 (4th Cir. 2011) .......... 28

*Martinez v. Regents of the University of California*,
241 P.3d 855 (Sup. Ct. Cal. 2010) .......... 14

*Morales v. Trans World Airlines, Inc.*
504 U.S. 374 (1992)........................................................................................... 13

*Murphy v. NCAA,*
584 U.S. 453 (2018)........................................................................................... passim

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009)............................................................................... 9

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
491 U.S. 350 (1989)........................................................................................... 26

*New York v. United States Dep't of Justice*,
951 F.3d 84 (2d Cir. 2020).................................................................................. 12

*New York v. United States*,
505 U.S. 144 (1992)............................................................................ 10, 12, 13, 16

*Nken v. Holder*,
556 U.S. 418 (2009)........................................................................................... 25

*Oceanic Navigation Co.* v. *Stranahan,*
214 U.S. 320 (1909)........................................................................................... 4

*Plyler v. Doe*,
457 U.S. 202 (1982)........................................................................................... 5

*Shaughnessy* v. *United States ex rel. Mezei,*
345 U.S. 206 (1953)........................................................................................... 4

*South Carolina v. Baker*,
485 U.S. 505 (1988)........................................................................................... 13

*United States v. Arizona*,
641 F.3d 339 (9th Cir. 2011)............................................................................... 26

*United States v. California,*
173 F.4th 1060 (9th Cir. 2026)............................................................................. 26

*United States v. Guzman*,
998 F.3d 562 (4th Cir. 2021)............................................................................... 4

*United States v. Illinois*,
2026 WL 2137256 ( S.D. Ill. July 24, 2026) ...............................................11, 14, 23

*United States v. Kansas*,
2026 WL 2654069 (D. Kan. Sept. 9, 2026) ........................................... 15, 23, 25

*United States v. Ky. Council on Postsecondary Education*,
2026 WL 880597 (E.D. Ky. Mar. 31, 2026) ........................................................ 6

*United States v. Ritter*,
167 F.4th 677 (4th Cir. 2026)........................................................................ 16, 17

*United States v. Texas*,
181 F.4th 548 (5th Cir. 2026)........................................................................ passim

*United States v. Walz*,
825 F. Supp. 3d 897 (D. Minn. 2026) ........ 17

*Young Conservatives of Tex. Found. v. Smatresk*,
73 F.4th 304 (5th Cir. 2023) ........ 21

**Constitution and Statutes**

U.S. Const, art. I, §8, cl. 4 ........ 3
U.S. Const. art. VI, cl. 2 ........ 3
1 U.S.C. § 1 ........ 23
8 U.S.C. §
1101(a)(15) ........ 7
1103 ........ 4
1188 ........ 4
1201 ........ 4
1302 ........ 4
1324a ........ 4
1325 ........ 4
1326 ........ 4
1373 ........ 13
1601 ........ passim
1601(2)(B) ........ 24
1621 ........ 2, 4, 5
1621(d) ........ passim
1623 ........ passim
1623(a) ........ passim
1646 ........ 12
Md. Code Ann. Educ. §
15-106.8 ........ passim
15-108.6(e)(2) ........ 2
18-402 ........ 7, 20
18-502 ........ 7, 20
18-605 ........ 7, 8, 20
Pub. L. 104-193 ........ 5
Pub. L. 104-208 ........ 1
Pub. L. No. 99–603 ........ 26

**Regulations and Rules**

Fed. R. Civ. P. 8 ........ 9
Fed. R. Civ. P. 12(b)(6) ........ 9
Fed. R. Civ. P. 56 ........ 10

Maryland Code Regs.

13B.07.02.03 ........ 8, 9, 20, 24, 25
13B. 08.07.03 ........ 20

13B.08.10.01 ..................................................................................................... 20
13B.08.10.02 ..................................................................................................... 20
13B.08.20.03 ..................................................................................................... 20

**Other Authorities**

Sanjay Rai, *Exemptions from Nonresident Tuition for Qualified Children of Undocumented Immigrations*, MHEC (July 2025), https://perma.cc/5TFD-NAP9. ............................................. 8

College Bound Foundation Scholarship Opportunities, *https://www.collegeboundfoundation.org/scholarships-grants/scholarship-opportunities/#baltimore_community_foundation* (last visited Sept. 17, 2026)........................... 15

Community Foundation of the Eastern Shore Scholarships, *https://www.cfes.org/scholarships* (last visited Sept. 17, 2026)......................................................................................... 15

https://www.justice.gov/opa/pr/department-justice-files-complaints-against-hawaii-dc-arkansas-and-utah-over-preferential ........................................................................................ 7

https://www.justice.gov/opa/pr/department-justice-files-complaints-against-arizona-new-mexico-oregon-and-washington......................................................................................... 7

https://www.justice.gov/opa/pr/department-justice-files-complaints-against-new-york-connecticut-and-vermont-challenging ........................................................................ 7

https://www.justice.gov/opa/pr/department-justice-sues-colorado-providing-state-tuition-illegal-aliens ................................................................................................................ 7

https://www.justice.gov/opa/pr/department-justice-sues-maryland-challenging-its-state-laws-provide-state-tuition-illegal ......................................................................................... 7

https://www.justice.gov/opa/pr/justice-department-sues-maryland-over-sanctuary-policies......... 7

https://www.justice.gov/opa/pr/department-justice-files-complaints-against-massachusetts-and-rhode-island-challenging-state......................................................................................... 7

## INTRODUCTION

Congress's command is clear: States cannot give preferential treatment to illegal aliens over American citizens. Specifically, when Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") in 1996, Division C, Sec. 505, Omnibus Consolidated Appropriations Act of 1997, Pub. L. 104-208 (Sept 30, 1996), it decided illegal aliens are not eligible for post-secondary education tuition benefits based on residency within a state if non-resident U.S. citizens are denied eligibility for those same benefits. Despite Congress's clear prohibition, the Maryland passed legislation that discriminates against U.S. citizens in favor of illegal aliens by making such aliens eligible based on residence for reduced in-state tuition and state financial assistance not available to U.S. citizens residing elsewhere. That legislation is plainly preempted by federal law.

Section 505(a) of IIRIRA (codified at 8 U.S.C. § 1623(a) in the Immigration and Nationality Act ("INA")) (hereinafter "Section 1623(a)") makes clear that an alien not lawfully present in the United States "shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). Maryland's laws, however, unmistakably violate this provision by relying on residence-related criteria for illegal aliens' eligibility for the State's postsecondary education benefits, while denying those same benefits to non-resident U.S. citizens.

Maryland's Dream Act, codified at Maryland Code Section 15-106.8, bases eligibility for the in-state tuition rate on factors including attendance at a public high school in Maryland, graduation from that high school, and the filing of Maryland tax returns for the two years prior to

matriculation at a Maryland college. *See* Md. Code. § 15-106.8(b). To maintain in-state tuition eligibility, a student or his or her parent/legal guardian must file Maryland tax returns using a Maryland address every year until a degree is conferred. *Id.* § 15-106.8(e)(2). Those provisions unequivocally apply to illegal aliens. *Id.* § 15-106.8(a). No general exception exists for U.S. citizens of other states. *See generally id.,* § 15-106.8. And the reason for that is explained in the first sentence of Maryland's Motion to Dismiss: the law seeks to reward those "with established ties to the State." Maryland Memorandum in support of its Motion to Dismiss (hereinafter "MTD"), ECF 8-1, at 1. The law is preempted by Section 1623(a).

Maryland's assistance to illegal aliens does not stop with tuition: multiple Maryland scholarship and financial assistance programs incorporate the Dream Act's requirements by reference, and those laws are challenged by the United States too. And, for community colleges, Maryland enacted a Regulation, 13B.07.02.03, providing that immigration status is not a bar to receiving in-state or in-county tuition, and requiring schools to implement the regulation by imposing at least three tiers of tuition: in-county, in-state, and out-of-state. *See* Md. Regulation 13B.07.02.03. That too is preempted by Section 1623(a), and also by 8 U.S.C. § 1621(d), because the benefits are awarded by regulation rather than State enactment.

Maryland contends otherwise arguing that Sections 1623 and 1621 are not valid preemption provisions under the Tenth Amendment, that the high school graduation and tax return criteria for eligibility are "residence-neutral," and that there are exceptions to the general rule of residence-based in-state tuition. Those arguments are unpersuasive. Sections 1623 and 1621 fall within Congress's enumerated power to regulate immigration and do so by conferring restrictions and benefits on individuals. Indeed, as discussed *infra*, multiple courts including the Court of Appeals for the Fifth Circuit have upheld the preemptive nature of one or both of those sections.

Further attendance at a public high school in Maryland, which generally requires residence in the state, particularly when combined with the filing of Maryland tax returns, is in fact a residence-based analysis. Further, as some courts have explained, identifying limited exceptions to the general rule is insufficient to avoid preemption because Congress's command is clear—if illegal aliens are eligible for in-state tuition on the basis of residence then U.S. Citizens of other states must be eligible for the same benefit without regard to residence; U.S. citizens cannot be treated worse than illegal aliens.

For the reasons set forth below, the United States is entitled to summary judgment that the challenged Maryland laws are preempted. It is also entitled to injunctive relief because it has suffered an irreparable, sovereign injury and there is no adequate remedy at law, and the balance of hardships and public interest weigh in its favor.

## BACKGROUND

### I. The Supremacy Clause & The Immigration Power

Ours is a dual sovereign system of government that balances power between the Federal Government and the states. Under this system, the Constitution grants to Congress "certain enumerated powers," but leaves "all other legislative power" "for the States." *Murphy v. NCAA,* 584 U.S. 453, 471 (2018). Under the Supremacy Clause, art. VI, cl. 2, "when federal and state law conflict, federal law prevails and state law is preempted." *Id.*

Immigration is an enumerated power of the Federal Government and thus not reserved to the states: "The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). "This authority rests, in part, on the National Government's constitutional power to 'establish an uniform Rule of Naturalization,' Art. I, § 8, cl. 4, and its inherent power as sovereign to control and conduct

relations with foreign nations." *Id.* at 394-95. The Supreme Court has "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Shaughnessy* v. *United States ex rel. Mezei,* 345 U.S. 206, 210 (1953); *see also United States v. Guzman*, 998 F.3d 562, 568 (4th Cir. 2021) ("The admission and exclusion of aliens is a sovereign prerogative that is exercised under the Constitution by the political departments."). Indeed, "'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quoting *Oceanic Navigation Co.* v. *Stranahan,* 214 U.S. 320, 339 (1909)). Granting the Federal Government power over immigration policy makes sense because "[i]mmigration policy can affect trade, investment, tourism, and diplomatic relations for the entire Nation, as well as the perceptions and expectations of aliens in this country who seek the full protection of its laws." *Arizona*, 567 U.S. at 395.

"Federal governance of immigration and alien status is extensive and complex." *Id.*; *see also Guzman,* 998 F.3d at 571 ("The INA is a self-contained, comprehensive, and reticulated administrative process[.]"). Congress, for example, imposed extensive limitations and requirements in the immigration sphere including, for example, alien registration requirements, authorization for states to deny public benefits to aliens, penalties for unlawful entry or reentry, and penalties for employers who hire unauthorized workers. 8 U.S.C. §§ 1302, 1621, 1324a, 1325, 1326. Congress has granted to various executive agencies, including the Department of Homeland Security, the Department of State, and the Department of Labor, the power to oversee aspects of federal immigration law and policy. 8 U.S.C. §§ 1103, 1188, 1201. Consistent with such grants of power, federal regulations provide for the removal of aliens and the enforcement of federal immigration laws. In short, it "is a routine and normally legitimate part of the business of the

Federal Government to classify on the basis of alien status, and to take into account the character of the relationship between the alien and this country, *only rarely are such matters relevant to legislation by a State*." *Plyler v. Doe*, 457 U.S. 202, 225 (1982) (emphasis added, quotations/citations omitted).

Though the Supremacy Clause provides that federal law trumps state law when the two conflict, the Tenth Amendment provides a check on federal power in that Congress lacks "the power to issue orders directly to the States." *Murphy,* 584 U.S. at 470. Thus, any preemption analysis typically includes analyses of whether the power invoked by a federal statute is an enumerated power of Congress and whether the statute issues a direct order to the states. *See id.*

## II. 8 U.S.C. §§ 1621 and 1623

Consistent with Congress's broad power to regulate immigration matters, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA") of 1996, Pub. L. 104-193 (Aug. 22, 1996), which restricted alien eligibility for many federal benefit programs. In PRWORA, Congress set forth "statements concerning national policy with respect to welfare and immigration" including that "[i]t continues to be the immigration policy of the United States that—…the availability of public benefits not constitute an incentive for immigration to the United States" and that "[i]t is a compelling government interest to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601, (2), (6). That section remains in effect today. *See id.*

As part of PRWORA, Congress enacted 8 U.S.C. § 1621(d), which provides that a state may provide eligibility for public benefits to an "alien who is not lawfully present" "only through enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility." 8 U.S.C. 1621(d). At least one court has held that "enactment of a State law" requires the law to

go through the state legislative process and excludes regulations promulgated outside of that process. *United States v. Ky. Council on Postsecondary Education*, No. 3:25-cv-00028-GFVT, 2026 WL 880597 at *9-10 (E.D.Ky. March 31, 2026).

Shortly after PRWORA, Congress enacted IIRIRA. Section 1623 was codified as part of that Act, and imposes a restriction on aliens "not lawfully present in the United States" in that they "shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less amount, duration, and scope) without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a).

## III. The Challenged Maryland Statutes and Regulation

The Maryland DREAM Act, codified at Maryland Code Educ. § 15-106.8,[1] is designed to "to make higher education at public institutions more affordable for students…with established ties to the State." MTD 1.

Section 15-106.8 sets forth, as a general matter, who is eligible to receive the in-state tuition rate at Maryland public institutions of higher education[2] (*Id.* 15-106.8(b)), Maryland public senior higher education institutions[3] (*id.* 15-106.8(c)), and Maryland community colleges[4] (*id.* 15-106.8(d)). At a minimum, to be eligible for the in-state tuition rate, an individual (which

---

[1] A true and correct copy of Section 15-106.8 of the Maryland Code Annotated, Education (2026) is attached hereto as Exhibit A.
[2] Md. Code Ann., Educ. § 10-101 (h)(1) "'Institution of higher education' means an institution of postsecondary education that generally limits enrollment to graduates of secondary schools, and awards degrees at either the associate, baccalaureate, or graduate level."
[3] Md. Code Ann., Educ. § 10-101 (m) "'Public senior higher education institution' means: (1) The constituent institutions of the University System of Maryland and the University of Maryland Center for Environmental Science; (2) Morgan State University; and (3) St. Mary's College of Maryland."
[4] There does not seem to be a separate definition for community colleges, but generally speaking they are governed by Title 16 of the Maryland Code Annotated, Education, §§ 16-101–16-715.

"[i]ncludes an undocumented immigrant individual")[5] must have: (1) attended a public or private high school in the state, (2) graduated from a public or private high school in the state or received a high school equivalency diploma in the state, (3) registered to enter college within six years of graduating high school in the state, (4) provided documentation that the individual or his or her parent or legal guardian filed Maryland income tax returns for each of the two years prior to the year of college matriculation, (5) provided an affidavit that the individual, if not a permanent resident, will seek to become one within 30 days of becoming eligible to do so, and (6) provided documentation of selective service registration, if applicable. *Id.* 15-106.8(a), (b); *see also* 15-106.8(c) (incorporating subsection (b) by reference); 15-106.8(d) (same).

Section 15-106.8(h) requires governing boards of each public institution of higher education to adopt policies to implement the statutory section overall, including in-state tuition eligibility. *Id.* 15-106.8(h).

Multiple Maryland laws incorporate the requirements of Section 15-106.8 by reference through requirements that a student be eligible for in-state tuition, including Md. Code Ann., Educ. §§ 18-402, 18-502, 18-605, and Md. Code Regs. 13B.08.07.03, 13B.08.10.01, 13B.08.10.02, and 13B.08.20.03. Those statutes and regulations relate to other educational award programs, such as Legislative and Career/Occupation-Based Grants and Scholarships (18-402, 18-502). Illegal aliens are eligible for other talent-based, occupation-based, and unique-population-based scholarships and grants based on residency: the Delegate Scholarship, *see* Md. Code Ann., Educ. § 18-502(b) (conditioning eligibility on being "eligible for in–State tuition under this article"); the

[5] Section 15-106.8(a) defines individual to "[i]nclude[] an undocumented immigrant individual" and to exclude "a nonimmigrant alien within the meaning of 8 U.S.C. § 1101(a)(15)." Section 1101(a)(15) defines categories of nonimmigrant status, i.e., "temporary lawful presence tied to specific purposes." *Cisneros v. Blanche*, 182 F.4th 363, 368, 368 n.12 (4th Cir. 2026).

Cybersecurity Public Service Scholarship, *see* Md. Code Regs. 13B.08.20.03 (conditioning eligibility on qualifying "for in-State tuition under Education Article, Title 15"); the Richard W. Collins III Leadership With Honor Scholarship, *see* Md. Code Ann., Educ. § 18-605 (conditioning eligibility on qualifying "for in-state tuition"); the Near Completer Grant, *see* Md. Code Regs. 13B.08.07.03 (conditioning eligibility on being a "Maryland resident of eligible for in-State tuition in accordance with Education Article, Title 15, Annotated Code of Maryland").

Maryland Regulation 13B.07.02.03 defines the minimum requirements for in-state versus out-of-state tuition for community colleges in Maryland. *See* Exhibit B (copy of regulation). Part A of the regulation provides that a college board of trustees "shall adopt and publish…a policy governing classification of students by domicile for tuition purposes" and "such classification of students by domicile shall be in accordance with this chapter" and further that "[a]n individual's immigration status may not preclude award of Maryland residency under this policy if the individual has the legal capacity to establish domicile in Maryland." 13B.07.02.03(A). The Regulation also requires the policy to distinguish between in-county residents, out-of-county Maryland residents, and out-of-state residents. 13B.07.02.03(B).

As reported by MHEC, during the Fall 2024 semester, 496 illegal aliens were enrolled and receiving in-state tuition across fifteen Maryland community colleges, and 309 illegal aliens were enrolled and receiving in-state tuition across nine public four-year institutions. Sanjay Rai, *Exemptions from Nonresident Tuition for Qualified Children of Undocumented Immigrations*, MHEC (July 2025), https://perma.cc/5TFD-NAP9. Combined, from Summer 2024 through Spring

2025, the amount saved by illegal aliens who received in-state tuition was $8,957,356.00[6]—a substantial portion of taxpayer dollars subsidizing education for illegal aliens. *Id.*

## IV. Procedural History

The United States filed its Complaint on July 16, 2026, alleging that all of the challenged Maryland laws are preempted by 8 U.S.C. § 1623 and that Md. Code Regs. 13B.07.02.03 is also preempted by § 1621(d). ECF 1. In the interest of efficiency, the parties negotiated a briefing schedule, ECF 6, which this Court entered, ECF 7. Pursuant to that schedule, Maryland moved to dismiss the Complaint for failure to state a claim on August 27, 2026. ECF 8, 8-1. Maryland does not challenge the sufficiency of the factual allegations in the complaint, but rather challenges the legal bases for the claims. *See id.* The United States now opposes that motion and cross-moves for summary judgment on all claims.[7]

## LEGAL STANDARDS

A 12(b)(6) motion to dismiss tests the sufficiency of the claims pled in the complaint. *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019); *see also* Fed. R. Civ. P. 12(b)(6). A complaint need only contain a short and plain statement of the claim showing that the pleader is entitled to relief. *Id.* citing Fed. R. Civ. P. 8; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion to dismiss, the court must accept the factual allegations in the complaint as true and draw all reasonable factual inferences in the plaintiff's favor. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

---

[6] This amount does not appear to include amounts spent on grants or scholarships that are also limited to in-state residents, including illegal aliens.

[7] The United States believes it should prevail. However, in an abundance of caution, if the Court were to grant Maryland's Motion to Dismiss, the United States requests leave to amend.

A party is entitled to summary judgment under Rule 56 if there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011); *see also* Fed. R. Civ. P. 56. When applying the summary judgment standard, the court views the evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Id.*

## ARGUMENT

### I. The Challenged Laws Are Preempted by Section 1623

#### A. Section 1623 is a Valid Preemption Statute

8 U.S.C. § 1623(a) includes an express preemption clause, "[n]otwithstanding any other provision of law," which indicates Congress's intent to preempt. *See United States v. Texas*, 181 F.4th 548, 559 (5th Cir. 2026) (holding § 1623 contains an express preemption clause). As articulated in *Murphy*, to preempt state law, a federal provision must, at a minimum, (1) "represent the exercise of a power conferred on Congress by the Constitution"; and (2) "be best read as one that regulates private actors." *Murphy*, 584 U.S. at 477. Defendants contend that Section 1623 fails both prongs of the *Murphy* test. *See* MTD 10-13 (arguing Section 1623 regulates states), 26 (arguing Section 1623 regulates the area of education). Defendants are wrong.

##### 1. Section 1623 Exercises Congress's Power to Regulate Immigration

The Constitution provides the power over immigration to Congress and the Executive; that power is not reserved to the states. *See supra* Background; *New York v. United States*, 505 U.S. 144, 156 (1992) ("If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States ..."). Section 1623 implements Congress's power to control immigration by limiting the benefits illegal aliens are entitled to receive. It restricts aliens not lawfully present from being eligible for a beneficial in-state tuition rate or other in-state postsecondary education benefits unless certain conditions are met. Congress

explained the purpose of such laws in Section 1601 touting the need for self-sufficiency and the need to remove the incentives for illegal immigration provided by the availability of public benefits. 8 U.S.C. § 1601.

Maryland suggests that Section 1623 regulates education, not immigration. MTD 26 ("Section 1623(a) purports to regulate in such an area—higher education."). That is incorrect. As the Southern District of Illinois recently observed in rejecting a similar argument, even though education is typically a function of state power, "neither the administration nor delivery of 'education' services is curtailed or regulated by § 1623(a)" and further, "the federal government may validly regulate in areas of its enumerated authority even when the regulation has incidental effects on state functions." *United States v. Illinois et al.*, -- F.Supp.3d --, No. 25-cv-1691, 2026 WL 2137256, at *8 (S.D.Ill. July 24, 2026) (citing *Haaland v Brackeen,* 599 U.S. 255, 281-83 (2023). Thus, Section 1623 falls squarely within Congress's power to regulate immigration.

**2. Section 1623 regulates private parties**

Defendants argue that Section 1623 is an invalid preemption provision under *Murphy* because eligibility for post-secondary education benefits is established by states and thus the provision necessarily regulates states. Br. 11. Maryland's argument misapprehends both the statute and Supreme Court jurisprudence.

On its face, Section 1623 unequivocally regulates aliens, United States citizens, and U.S. nationals. It applies to "an ***alien*** who is not lawfully present in the United States" and it places a restriction on such aliens. 8 U.S.C. § 1623(a) (emphasis added). The "alien" "shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless" certain conditions are met. 8 U.S.C. § 1623. Those conditions are that citizens and nationals of the United States are "eligible" for the same benefit "without regard to

whether the citizen or national is such a resident." *Id.* Section 1623 thus regulates—that is, provides benefits to or restrictions on—individuals including aliens (restrictions), and U.S. citizens and nationals (benefits). It does so by restricting aliens from being eligible to receive benefits based on residence, which is an incentive to come to and remain in this country illegally (*see* § 1621(d)), unless citizens and nationals are eligible for the same benefits without regard to residence, to ensure that U.S. Citizens cannot be treated worse than illegal aliens. *See Murphy*, 584 U.S. at 477, 478-79. Indeed, the statute does not mention the states or their legislatures at all. *See* 8 U.S.C. § 1623.

Section 1623 is part of a comprehensive framework regulating alien eligibility for public benefits that Congress enacted through the passage of PRWORA and IIRIRA. *See, e.g.*, 8 U.S.C. §§ 1601-1646. Those provisions address, among other things, eligibility for federal benefits, state benefits, and sponsorship requirements. Congress's purpose was to regulate aliens, reduce their dependence on the welfare of the United States, and remove incentives for them to enter the country illegally and remain illegally. *See* 8 U.S.C. § 1601. Congress also sought to ensure that aliens are not treated better than U.S. citizens. 8 U.S.C. § 1623; *see also Texas*, 181 F.4th at 559 (under Section 1623, "U.S. citizens or nationals must be treated no worse than illegal aliens."). Section 1623 thus regulates private parties. Indeed, the INA as a whole "certainly confers rights and places restrictions on large numbers of private persons." *New York v. United States Dep't of Justice*, 951 F.3d 84, 114 (2d Cir. 2020) (noting that district court's preemption analysis that focused on statutory language relating to government entities and officials in 8 U.S.C. § 1373 "may have been too narrow").

Defendants rely on *New York v. United States*, 505 U.S. 144, 166, 175 (1992), to suggest erroneously that Section 1623 issues a direct command to the states. MTD 11. In *New York*,

however, the federal scheme required states to either take title to low level radioactive waste or regulate according to Congress's command, neither of which was permissible. *New York v. United States*, 505 U.S. 144, 176 (1992). Granted, *any* federal law that preempts a State law necessarily has the practical effect of telling a State that it may not do something. *Murphy,* 584 U.S. at 477 ("Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted."). That is not, however, a direct command to the states; it is the natural effect of the Supremacy Clause. That was true in *Morales*, 504 U.S. at 383, which restricted the states' ability to impose regulations on airline routes, in *South Carolina*, 485 U.S. at 514-15, which taxed unregistered state bonds to cause states to issue registered bonds, and in *City of New York. v. United States*, 179 F.3d 29, 31, 35 (2d. Cir. 1999), which held that a New York law that "prohibit[ed] its employees from voluntarily providing federal immigration authorities with information concerning the immigration status of any alien" was in direct conflict with 8 U.S.C. § 1373. 179 F.3d at 31, 35. When a state and federal law conflict, the state law must yield.

Section 1623 does not direct state legislatures, commandeer state employees, or require the States to expend any resources. *See Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S.264, 288 (1981). Rather, similar to the law upheld in *Hodel*, that Section gives the States a choice. Maryland can, for example, decide that aliens not lawfully present are not eligible for postsecondary education benefits under any conditions, or they can decide to make such aliens eligible based on criteria other than residence (such as merit or need). It is only by choosing to provide postsecondary education benefits to illegal aliens based on residence within the state, as Maryland has done, that states must also provide that same eligibility to United States citizens and

nationals regardless of their residence, in accordance with Section 1623, to prevent U.S. citizens and nationals from being treated worse than aliens not lawfully present in the country. *See Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D.Va. 2004) ("The more persuasive inference to draw from § 1623 is that public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit."). Maryland is free to choose; Section 1623 does not command Maryland or its legislature to do anything at all.

Defendants' reliance on one sentence in *Martinez v. Regents of the University of California*, 241 P.3d 855, 863 (Sup. Ct. Cal. 2010), to argue that 1623 issues commands to the states is unpersuasive. MTD 12. The sentence relied upon was made in passing by the court and is not the holding of the case. *Id.* at 863. Indeed, the *Martinez* court did not address whether 1623 was a valid preemption provision at all. Instead, it conducted a preemption analysis and concluded the California statute did not fall within the ambit of Section 1623. *Martinez*, 241 P.3d at 863.

Two cases directly on point are relegated to a footnote in Defendants' brief. MTD 12 n.9. In *United States v Illinois*, the district court considered the same arguments Maryland makes here, *see Illinois*, 2026 WL 2137256, at *7, but ultimately agreed with the United States, holding that 1623 is "a valid preemption provision" because "[i] regulates the eligibility of private individuals for certain benefits in an area of federal authority. It does not commandeer state legislatures or officials." *Id.* at *8 (citing *Texas*, 181 F.4th at 559–60). Similarly, in *United States v. Texas*, the Fifth Circuit rejected the argument that Section 1623 commandeers state legislatures finding instead that the section "declares a limitation on illegal eligibility itself and does not regulate states directly." 181 F.4th. at 559-60 (citations/quotations omitted, cleaned up). The Fifth Circuit explained that "Section 1623(a) is ordinary pre-emption legislation that 'denies permission,' not a

command to, or direct regulation of, the states" and the section "merely targets offending *laws*" and does not implicate the Tenth Amendment. *Id.* at 560 (citations omitted, emphasis original). And, since the filing of Defendants' Motion to Dismiss, the district of Kansas rejected an argument that Section 1623 regulates state legislatures, finding that by its plain terms, Section 1623 applies to aliens. *United States v. Kansas*, No. 5:26-cv-4066, 2026 WL 2654069, at *5 n.8 (D. Kan. Sept. 9, 2026).

Finally, even if this Court were to accept Defendants' argument that Section 1623 regulates those who determine eligibility rather than aliens or U.S. citizens, Defendants' Tenth Amendment defense still fails. "Legislation that applies 'evenhandedly' to state and private actors does not typically implicate the Tenth Amendment." *Haaland*, 599 U.S. at 283. Though Defendants argue that states determine eligibility for post-secondary educational benefits based on residence (MTD 12-13), that argument ignores the many private foundations that offer scholarships on the basis of residence within the state. *See, e.g.*, https://www.collegeboundfoundation.org/scholarships-grants/scholarship-opportunities/#baltimore_community_foundation (describing numerous scholarships for Baltimore high school students to attend college); *see also* https://www.cfes.org/scholarships (noting that some scholarships have county or school-based requirements). The availability of such private scholarships shows that private entities also determine eligibility based on residence within a state. Thus, if this Court were to find that Section 1623 regulates those who provide postsecondary benefits to illegal aliens as opposed to the aliens themselves, Section 1623 regulates all such parties equally, whether the state or a private party, and the Tenth Amendment is not implicated. *See Haaland*, 599 U.S. at 281-82 (finding no commandeering because it was not hard to find examples in which involuntary foster care placement was initiated by parties other than the state).

Even if this were a close call—and it is not—it should be resolved in favor of the constitutionality of the statute. "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568, 575 (1988); *see also New York*, 505 U.S. at 170 ("This rule of statutory construction pushes us away from petitioners' understanding of § 2021c(a)(1)(A) of the Act, under which it compels the States to regulate according to Congress' instructions."). This is particularly true because Section 1623 was enacted after *New York v. United States*, which held that the Federal Government cannot compel the states to enact a federal program, 505 U.S. at 188, and Congress is presumed to know the law. *Albernaz v. United States*, 450 U.S. 333, 341 (1981).

**B. The Challenged Laws are Preempted**

**1. The Challenged Laws Create Eligibility On the Basis of Residence in the State**

Section 1623 imposes limitations if an alien not lawfully present receives post-secondary education benefits "on the basis of residence." 8 U.S.C. § 1623. Maryland and the United States agree that "on the basis of residence" as used in Section 1623 is a recitation of "but-for" causation but Maryland misapplies that standard. MTD 16; *see also Texas*, 181 F.4th at 557 (construction § 1623(a)'s language of "on the basis of" as but-for causation). "But-for" causation means that the condition is *a* consideration of the statute, not the *sole* consideration of the statute. *See United States v. Ritter*, 167 F.4th 677, 684-85, 684 n.5 (4th Cir. 2026) (distinguishing but-for causation from sole causation and noting multiple but-for causes of the crime); *see also Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 769-70 (2018) (distinguishing between but-for and sole causation in statutory construction). Nonetheless, Maryland's entire approach is to look for exceptions to the

general rule of its own statutory text to argue that it avoids Section 1623's requirement for eligibility decisions made "on the basis of residence"—an approach that would only work under a sole causation standard.[8] *See Ritter*, 167 F.4th at 685.

**a. Maryland Dream Act, § 15-106.8**

That residence is a consideration of Maryland's Dream Act, § 15-106.8, is apparent from the statutory text. Section 15-106.8(b) of the Maryland Code provides four criteria that all students (including aliens not lawfully present in the U.S.) must satisfy for initial eligibility for in-state tuition at a Maryland university:

1). The student must have attended a Maryland public or private high school;

2) The student must have graduated from a Maryland public or private high school or received a high school equivalency diploma in Maryland;

3) The student must register at a Maryland college within 6 years of graduating high school;

4) the student, or the students' parent/legal guardian, must have filed a Maryland tax return for each of the two years preceding the matriculation date.

Md. Code Ann. Educ. § 15-106.8(b). Section 15-106.8(d) incorporates subsection (b) and provides additional limitations on the particular county stated on the tax return or in which the high school was located. Section 15-106.8(e) requires that to *maintain* eligibility for in-state tuition, the student or the student's parent/legal guardian must use a Maryland address on the income tax return each year until the student is awarded a degree. Though Maryland calls these requirements "residence-neutral factors," MTD 16, they are nothing of the sort, particularly when evaluated as a whole.

[8] The court in *Walz* made the same legal error, concluding that any exception to the residence requirement precluded preemption. *Walz*, 2026 WL 851231 at *8.

Rather, attendance at a public high school, when combined with the filing of income tax returns, creates a near-perfect proxy for residence in the state.

Public high school attendance and graduation is based on residence because, generally speaking, attending a public high school in Maryland requires a student to be domiciled with a parent or legal guardian in Maryland, *see* Maryland Educ. Code, § 7-101(b)(1), and fraudulent attendance when the student is not domiciled in Maryland is subject to penalties, *id.* §7-101(b)(3). Anyone who satisfies § 7-101(b)(1) by relying on public high school attendance and graduation is almost certainly a Maryland resident, or was at the time of graduation[9] thereby satisfying Section 1623's "on the basis of residence" requirement. Nor does it matter that a private high school in Maryland has no similar residency restriction because under the but-for causation standard, the statute can be satisfied by attendance at and graduation from a public high school. Thus, the challenged statute, § 15-106.8, conditions eligibility on residence under a but-for causation standard.

No further analysis is required, but for the sake of completeness, the tax return requirements further support the preemption analysis. Both fulltime and parttime Maryland residents are required to file Maryland tax returns because they reside in Maryland, unless their income is below certain thresholds. *See* Maryland Code § 10-805; Exhibit C, Maryland 2025 Nonresident Tax Forms and Instructions, at p. 1, part 1 (discussing resident and non-resident filers). Thus, the filing of a Maryland tax return is, in many instances, based on residence. And, when combined with public high school attendance, there can be little doubt that the criteria of 15-106.8 captures residence.

[9] Section 7-101 contains certain edge cases for when a student may be permitted to attend a Maryland public school despite failing the residency requirement, but those are the exception not the rule.

Maryland argues that non-residents can file non-resident tax returns. MTD 18. That is true. But while Maryland cites the general rule that all non-residents with Maryland income must file a Maryland tax return (MTD 18), the exceptions to that rule are expansive. *See* Maryland Code § 10-806(d) (exceptions for nonresidents); Exhibit C at 1-2. Maryland exempts individuals below certain income thresholds. *Id.* at p.2, Table 1. Maryland also exempts individuals in Virginia, West Virginia, portions of Pennsylvania, and the District of Columbia who earned all of their income in Maryland. *Id.* at p.2. Thus, persons filing Maryland tax returns are Maryland residents, or fall into an edge case—residents of neighboring states who earn income in both Maryland and another state, or are residents of non-neighboring states who earn income in Maryland. Those edge cases do not save the law because Maryland residence undergirds the collective requirements of public high school attendance, public high school graduation, and Maryland income tax returns. Indeed, Maryland admits the purpose of the Act is to reward those with "established ties to the State." MTD 1. The Maryland Dream Act is making determinations based on residence within the State.

That is even more obvious with the requirements to *maintain* the exemption. Section 15-106.8(d) is clear: To retain resident tuition status, the student and or his or her parent/legal garden "shall use" a Maryland address on their Maryland income tax return until the student receives a degree. Maryland argues that someone could use a P.O. Box rather than a mailing address (MTD 19) to qualify for in-state tuition under Section 15-106.8. That may be true, but the edge case does not undermine the but-for causality of the statute. As discussed, the majority of people filing Maryland income tax returns reside in Maryland because the neighboring states are exempt unless the individual earned income in both Maryland and another state. Ex. B. at 2.

**b. Statutes incorporating § 15-106.8 by reference**

Likewise, each of the laws identified in Count II of the Complaint, namely Md. Code Ann., Educ. §§ 18-402, 18-502, 18-605, and Md. Code Regs. 13B.08.07.03, 13B.08.10.01, 13B.08.10.02 and 13B.08.20.03, rely on residence. Those laws create eligibility for post-secondary education benefits, including for aliens not lawfully present within the United States, and incorporate the Maryland Dream Act eligibility requirements by reference by requiring students to be eligible for in-state tuition. Thus, those laws also create eligibility based on residence within the State of Maryland for the same reasons that Section 15-106.8 does, as explained in subsection a, *supra*.

**c. Regulation 13B.07.02.03**

Regulation 13B.07.02.03, too, relies on residence. It defines the minimum requirements for in-state versus out-of-state tuition for community colleges in Maryland. Part A of the regulation provides that a college board of trustees "shall adopt and publish…a policy governing classification of students by domicile for tuition purposes" and "such classification of students by domicile shall be in accordance with this chapter" and further that "[a]n individual's immigration status may not preclude award of Maryland residency under this policy if the individual has the legal capacity to establish domicile in Maryland." 13B.07.02.03(A). The Regulation also requires the policy to distinguish between in-county residents, out-of-county Maryland residents, and out-of-state residents. 13B.07.02.03(B). Thus, Regulation 13B.07.02.03 requires community colleges to set differing tuition rates based on residence in Maryland, and to award such rates to aliens not lawfully present.

Maryland argues that there is no preemption because 13B.07.02.03 does not confer eligibility on anyone, it only sets the contours under which eligibility may be conferred. MTD 30. Maryland's reliance on the Fifth Circuit's decision in *Young Conservatives of Texas Foundation v.*

*Smatresk*, is misplaced. The law at issue in *Young Conservatives* merely stated what the nonresident tuition rate was, and made no mention of illegal aliens or their eligibility whatsoever. *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023). Here, by contrast, the regulation is specific that any college policy cannot preclude an alien not lawfully present from the resident rate. 13B.07.02.03(A). Thus, whatever the specifics of the tuition policies, they must classify by domicile, they cannot exclude aliens not lawfully present, and they must distinguish between in-county, in-state, and out-of-state residents. Though Maryland claims that University policy ultimately confers the eligibility, those policies are required to implement Regulation 13B.07.02.03. If that Regulation falls, so too do any policies that rely on or incorporate its illegal terms.

**2. The Challenged Laws do not make U.S. citizens eligible for the same benefit without regard to residence.**

Rather than argue that nonresident U.S. Citizens are eligible for the same benefit without regard to residence, Maryland argues that under 15-106.8 of the Dream Act, nonresident students are not *precluded* by the statutory text from receiving benefits. MTD 21. Maryland then claims that in some instances students from adjacent localities may be given a waiver to attend Maryland public schools or students from other states could attend private school in Maryland.[10] *Id*. But as discussed, by affording resident tuition benefits to all students who attend and graduate from a Maryland public high school, Maryland has made a determination based on residence—the underlying factor for public school attendance—and that determination excludes U.S. citizens of

[10] Maryland also argues, oddly, that a student could attend public school in Maryland and then move away and be a U.S. citizen who is eligible without regard to residence, but that is incorrect because the tuition determination would nonetheless be based on the student's residence at the time of high school. Section 1623 does not specify that the only residence determination that matters is the current residence. *See* 8 U.S.C. § 1623(a).

other states. By then combining that requirement with income tax returns for the two years prior to matriculation, Maryland has solidified the residency requirement. Indeed, a student from Texas who attends a private boarding school in Maryland is unlikely to have a parent/legal guardian who earns income in Maryland and therefore files a Maryland tax return.

Because Section 15-106.8 does not provide in-state tuition generally to U.S. citizens of other states, it runs afoul of Section 1623, as do the statutes that incorporate its requirements by reference. Thus, Section 15-106.8, and Md. Code Ann., Educ. §§ 18-402, 18-502, 18-605, and Md. Code Regs. 13B.08.07.03, 13B.08.10.01, 13B.08.10.02, and 13B.08.20.03, are all preempted and invalid.

The same is true of Regulation 13B.07.02.03, which mandates differential tuition for in-county, in-state, and out-of-state students, and further mandates that aliens not lawfully present must be eligible for in-state tuition. By mandating those differing rates while making illegal aliens eligible, the Regulation runs afoul of Section 1623 and is preempted and invalid.

Maryland argues that because there are some exceptions to the general rule, such as for a West Virginia resident attending Garret College or a nursing student, the Maryland Dream Act does not violate Section 1623. MTD 22. Maryland further claims that other classes of students, such as members of the military, foreign service, or intelligence community, can obtain the in-state tuition rate. MTD 23. But these arguments fail because Section 1623 requires that the benefit made available to U.S. citizens regardless of residence must be of the same scope. 8 U.S.C. § 1623. To say that an alien not lawfully present can obtain in-state tuition for any degree program at any college in Maryland, while an out-of-state resident can obtain it only for certain schools, certain degrees, or if they are in certain branches of the U.S. government, is not a benefit of the same scope.

Maryland also claims its exceptions save its statute because Section 1623 refers to "a" U.S. citizen, and does not mean "all." MTD 24-25. This argument has been rejected by other courts. *See, e.g.*, *Texas*, 181 F. 4th at 559; *lllinois*, 2026 WL 2137256 at *11. Section 1623 uses parallel language: it refers to "an alien" and then "a citizen." 8 U.S.C. § 1623. There is nothing in the statute to suggest Congress meant just a single alien or a single citizen, and indeed such a reading would abrogate the entire purpose of the statute. It would also be inconsistent with the Dictionary Act, under which the singular is properly read to include the plural. 1 U.S.C. § 1 ("words importing the singular include and apply to several persons, parties, or things"); *Illinois*, 2026 WL 2137256 at *11. As the Fifth Circuit recently observed, "if some U.S. citizens or nationals, regardless of residency, are ineligible for reduced in-state tuition rates, then all illegal aliens must be ineligible to receive the same benefit based on residency. U.S. citizens or nationals must be treated no worse than illegal aliens." *Texas*, 181 F.4th at 559. That is because "Section 1623(a) is a categorical prohibition, whose reference to 'a citizen or national' naturally reads to include the plural, and contains no capacious escape hatch allowing a state to satisfy the 'unless' condition by identifying a single U.S. citizen or national somewhere who can obtain the benefit *vis-à-vis* a limited exception." *Id.* at 558. *See also Illinois*, 2026 WL 2137256, at *11 ("Identifying one, or even a few, citizens who might still qualify … does not satisfy the exception. It does not make the benefit available to U.S. citizens generally without regard to Illinois residency" and accepting such "narrow, hypothetical exceptions…would render the 'unless' clause meaningless surplusage"); *Kansas*, 2026 WL 2654069, at *5 ("Were the Court to accept that a single example (or even a small range of examples) is all that is required, the reading would eviscerate the prohibition, rendering it essentially toothless.").

Maryland argues that under the United States' interpretation, to provide in-state tuition to aliens not lawfully present would mean that a state could not maintain its in-state and out-of-state tuition tiers, and such a result would defy common sense. MTD 26. But that is precisely the result that Congress intended by eliminating that incentive for illegal aliens to come to the United States. *See* 8 U.S.C. 1601(2)(B), (6). Nor does such a scheme run afoul of anticommandeering. It does not shift the cost of regulations as Maryland suggests, rather, as discussed *supra*, it gives states a choice in how they choose to structure their tuition benefits, consistent with Section 1623.

* * *

Thus, because Section 1623 is a valid preemption provision, and because each of the challenged laws makes aliens not lawfully present in this country eligible on the basis of residence for post-secondary education benefits that are not available to U.S. Citizens without regard to residence, the challenged laws are expressly preempted by 8 U.S.C. § 1623(a) and invalid.

## II. Section 1621(d) is a Valid Preemption Provision that Preempts the Challenged Regulation

Count IV of the Complaint alleges that Section 1621(d) also preempts Maryland Regulation 13B.07.02.03, which as explained *supra*, mandates differential tuition for in-county, in-state, and out-of-state students, and further mandates that aliens not lawfully present must be eligible for in-state tuition. In its Motion to Dismiss, Maryland alleges, summarily, that "Section 1621(d) likewise violates the anticommandeering doctrine because it not only directs *what* states must do ('affirmatively provide') but also dictates *how* they must do it (by 'enactment of State law')." That is the entirety of Maryland's argument that Section 1621(d) is not a proper preemption provision, and it is incorrect. As the Eastern District of Kentucky explained, Section 1621(a) provides "a general rule that certain unlawful aliens are ineligible for State and local public benefits" while the other subsections provide limited carveouts to that rule. *Ky. Council on*

*Postsecondary Education*, 2026 WL 880597 at *9. Section 1621(d), the court reasoned, is "a limited exception from its general rule: States may extend public benefits to unlawful aliens only through the enactment of a State law." *Id.*; *see also id.* at *10. By doing so, it restricts the benefits illegal aliens may receive and offers States a choice: should they choose to provide such benefits, they must do so by enacting a law. *See Murphy*, 584 U.S. at 476 (describing precedents upholding such "cooperative federalism" programs). But states are not required to offer any such benefits at all. Thus, Section 1621(d) is a valid preemption provision. And, under that provision, Maryland Regulation 13B.07.02.03 is preempted and invalid because the regulation was, indisputably, enacted outside of the State legislative process.

## III. The United States is Entitled to an Injunction

To establish entitlement to an injunction, a plaintiff is required to show the traditional injunction factors that (1) it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The balance of harms and public interest factors "merge when the Government is the opposing party." *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, the injunction factors are easily met.

***First***, the United States has suffered irreparable injury and there is no remedy at law. Control over immigration is both a sovereign prerogative and an enumerated power of Congress. *Arizona*, 567 U.S. at 394-95. Federalism as embodied in the Constitution requires that certain powers belong to the national sovereign, while others are reserved to the states. *Murphy*, 584 U.S. at 470. Immigration belongs to the "national sovereign, not the 50 separate States." *Arizona*, 567 U.S. at 395. Yet, Maryland seeks to upset this constitutional order by establishing its own

immigration policy via state laws, in direct conflict with federal immigration law. Maryland's blatant challenge to the Constitution and the bedrock principles of Federalism that undergird our rule of law as a nation causes irreparable harm to the United States. *See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 366-67 (1989) (suggesting that "irreparable injury may possibly be established … by a showing that the challenged state statute is flagrantly and patently violative … of the express constitutional prescription of the Supremacy Clause"); *United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011) (affirming district court finding of likelihood of irreparable harm where Supremacy Clause is violated); *United States v. California,* 173 F.4th at 1069 (finding likelihood irreparable harm based on a Supremacy Clause violation in context of stay pending appeal); *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009) (constitutional violation coupled with damages sufficient for irreparable harm).

The United States is also irreparably harmed because the challenged laws frustrate its immigration laws and policies. Through Section 1623, Congress chose to limit eligibility for post-secondary education benefits for aliens not lawfully present unless U.S. citizens and nationals of other states were equally eligible without regard to residence. That was in keeping with Congress's express statements of national immigration policy found in Section 1601, emphasizing self-sufficiency and the removal of public benefits as an incentive to illegal immigration. 8 U.S.C. § 1601. Congress also instructed that "the immigration laws of the United States should be enforced vigorously and uniformly," *see* Immigration Reform and Control Act of 1986, Pub. L. No. 99–603, § 115(1), 100 Stat. 3359, 338. Maryland chose to undermine Congress with its challenged laws. But individual states "may not pursue policies that undermine federal law." *Arizona*, 567 U.S. at 416. Without this Court's intervention, the challenged laws will impede the

Federal Government's law and policy expressed in Section 1623, allowing the State to supplant the will of the Federal Sovereign in an area of law expressly assigned to the Federal Sovereign's political branches.

Furthermore, a failure to enjoin these laws will invite other States to enact their own laws, resulting in a patchwork system of laws severely undermining the "integrated scheme of regulation created by Congress." *Arizona*, 567 U.S. at 402 (internal quotations and citation omitted). Indeed, many states have enacted such laws, requiring the United States to pursue them one by one.[11] Defendants cannot be rewarded for unconstitutionally second-guessing the Federal Sovereign, resisting Congress's will, and frustrating federal programs. *Cf. City of New York*, 179 F.3d at 35 (rejecting City's sovereignty argument as seeking to allow "states and localities to engage in passive resistance that frustrates federal programs."). The only remedy for such harms is to enjoin the challenged laws; there is no adequate remedy at law.

---

[11] *See, e.g,*, https://www.justice.gov/opa/pr/department-justice-files-complaints-against-hawaii-dc-arkansas-and-utah-over-preferential;

https://www.justice.gov/opa/pr/department-justice-files-complaints-against-arizona-new-mexico-oregon-and-washington;

https://www.justice.gov/opa/pr/department-justice-files-complaints-against-new-york-connecticut-and-vermont-challenging;

https://www.justice.gov/opa/pr/department-justice-sues-colorado-providing-state-tuition-illegal-aliens;

https://www.justice.gov/opa/pr/department-justice-sues-maryland-challenging-its-state-laws-provide-state-tuition-illegal;

https://www.justice.gov/opa/pr/justice-department-sues-maryland-over-sanctuary-policies;

https://www.justice.gov/opa/pr/department-justice-files-complaints-against-massachusetts-and-rhode-island-challenging-state.

***Second***, the balance of hardships and public interest tip decidedly in favor of the United States. The public has a strong interest in maintaining our system of federalism and the Constitutional lines drawn between Federal and State power, as that is the very bedrock of our system of law and our nation. Maryland's challenged laws undermine the constitutional framework of our nation. For that reason, the public also has no interest in enforcing those laws. *Legend Night Club v. Miller*, 637 F.3d 291, 302-03 (4th Cir. 2011) ("[T]he State of Maryland is in no way harmed by issuance of an injunction that prevents the state from enforcing unconstitutional restrictions… and … upholding constitutional rights is in the public interest."). That is particularly true here because "the public interest in enforcement of the immigration laws is significant." *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d. 1211, 1221 (D.C. Cir. 1981) (collecting cases). To the extent members of the public in Maryland disagree with federal immigration policy, they can address those concerns to their elected representatives in the U.S. Congress. Moreover, there is little hardship to the Defendants because the challenged laws need only be enjoined *as applied* to illegal aliens. The rest of Maryland's resident tuition scheme can remain in place. Should Maryland wish to revise its laws to comply with Section 1623, it has various available options. Maryland could (i) provide one tuition rate to residents and non-residents alike while permitting illegal aliens to attend its colleges and universities, (ii) retain its resident-tuition scheme but exclude illegal aliens from eligibility for post-secondary education benefits on the basis of residence, or (iii) provide benefits to residents and illegal alien residents based on factors other than residence (e.g., financial need or merit).

Thus, the United States has shown that it is entitled to injunctive relief.

## CONCLUSION

For the foregoing reasons the United States requests that this Court enter summary judgment in its favor, deny Maryland's Motion to Dismiss, and permanently enjoin the challenged laws.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

HILARY K. PERKINS
Director
Enforcement & Affirmative Litigation Branch

JACQUELINE COLEMAN SNEAD
Deputy Director, Affirmative Litigation Section

*s/ Alexandra McTague Schulte*
Senior Litigation Counsel
United States Department of Justice
Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, D.C. 20044
Tel: 202-718-0483
Email: alexandra.schulte@usdoj.gov

*Attorneys for the United States*